J-A13037-16

2016 PA Super 184

| | | |
|---|---|---|
| SHARLEEN M. RELLICK-SMITH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BETTY J. RELLICK AND KIMBERLY V. | : | |
| VASIL | : | No. 1105 WDA 2015 |

Appeal from the Order entered June 22, 2015
in the Court of Common Pleas of Indiana County,
Orphans' Court at No. 32-14-0490

BEFORE: OLSON, STABILE and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.:                          **FILED AUGUST 22, 2016**

Sharleen M. Rellick-Smith ("Rellick-Smith") appeals from the Order granting the "Motion to Dismiss" filed by Betty J. Rellick ("Rellick") and Kimberly V. Vasil ("Vasil"). We vacate the Order and remand for further proceedings.

Rellick-Smith commenced this action by filing a Complaint in Orphans' Court[1] against Rellick and Vasil (sometimes collectively referred to as "the Defendants") on October 14, 2014. All parties to the instant case are relatives of Rose M. Rellick (hereinafter "the decedent"),[2] who died on December 20, 2012.[3] In March 2006, Rellick and Vasil executed documents

_____

[1] Though a case in Orphans' Court is commenced by filing a petition, rather than a complaint, **see** 20 Pa.C.S.A. § 761, we, like the Orphans' Court, will overlook this minor defect.

[2] Vasil and Rellick-Smith are nieces of the decedent. Rellick is the decedent's sister. Complaint, 10/14/14, at ¶¶ 4, 5.

[3] The record does not reveal whether the decedent died with a will, or the identity of the personal representative of her estate.

giving them power of attorney ("POA") concerning the decedent's affairs. Complaint, 10/14/14, at ¶ 6; *see also id.*, Exhibit A. In August 2006, the decedent created two certificate of deposit accounts (collectively "the CDs") at First Commonwealth Bank ("First Commonwealth"). *Id.* at ¶¶ 7, 8.[4] According to Rellick-Smith, the decedent created these accounts "for the purpose of estate planning" for "her intended beneficiaries." *Id.* at ¶ 7. Both of the CDs were created in the names of the decedent, Rellick-Smith, Rellick, and Vasil. *Id.* at ¶ 9; *see also id.*, Exhibits B and C.[5]

On July 31, 2009, Rellick and Vasil, using their authority as the decedent's agents under the POA, both executed a First Commonwealth form to remove Rellick-Smith's name from the CDs. *Id.* at ¶ 10; *see also id.*

---

[4] At the time of their creation, the two CDs were valued at $144,678.11 and $152,043.90, respectively. Complaint, 10/14/14, Exhibits B and C.

[5] Notably, the funds in the CDs were held "in trust for" Rellick-Smith, Rellick, and Vasil. One who deposits money in a savings account in her own name in trust for another establishes a "Totten trust." *In re Estate of McFetridge*, 372 A.2d 823, 825 (Pa. 1977). The name is derived from *In re Totten*, 179 N.Y. 112, 71 N.E. 748 (N.Y. 1904), the New York Court of Appeals decision widely credited with first conceiving the notion of a "tentative" trust. "A Totten trust allows the depositor to retain complete control of the fund during his life and yet secure to the beneficiary any balance standing in the account at the death of the depositor." *Estate of McFetridge*, 372 A.2d at 825 (citation, quotation marks, and ellipses omitted). "Totten Trusts [] are essentially a 'poor man's will,' a judicial creation that[,] strictly speaking[,] is neither a will nor a trust but are fairly obviously testamentary transfers." *In re Estate of Rood*, 121 A.3d 1104, 1108-09 (Pa. Super. 2015) (citation, brackets and some internal quotation marks omitted).

Exhibit D.[6]  Rellick-Smith was not informed that her name had been removed from the CDs.  *Id.* at ¶ 12.

Rellick-Smith contends that, sometime in March 2013 (approximately three months after the decedent's death), Rellick and Vasil withdrew all of the money in the CDs,[7] and divided it evenly among themselves.  *Id.* at ¶¶ 15, 17.  Rellick-Smith received no money from the CDs.  *Id.* at ¶ 16. According to Rellick-Smith, "[i]t was the intention of [the decedent] for the money in these two CDs to be divided evenly" between Rellick-Smith, Rellick, and Vasil.  *Id.* at ¶ 18.  Rellick-Smith argues that because Rellick and Vasil abused their authority as agents under the POA agreement in unilaterally removing Rellick-Smith's name from the CDs, Rellick-Smith is entitled to one-third of the suspected value of the CDs at the time the

---

[6] The Complaint alleges that Rellick also signed the form in the decedent's name.  Complaint, 10/14/14, Exhibit D.  None of the parties allege that the decedent was present at the time of signing, or specifically authorized the change of beneficiaries.

[7] Rellick-Smith states that although she is not certain of the exact value of the CDs at that time, she believed them to be worth $400,000.00 combined. Complaint, 10/14/14, at ¶ 15.

accounts were cashed ($133,000.00, plus interest). *Id.* at ¶¶ 19, 20, 23.[8]

Approximately two weeks after the filing of the Complaint, the Defendants filed an Answer. On February 11, 2015, the Defendants filed the "Motion to Dismiss," asserting that Rellick-Smith lacked standing to sue and, in the alternative, the action was barred by the applicable statute of

---

[8] Nowhere in Rellick-Smith's three-page Complaint does she specifically identify any cause of action. Rather, the Complaint alleges only as follows: "[Rellick-Smith] believes that the Defendants violated Pennsylvania laws by using their authority as agents of [the decedent] for their own financial gain through the removal of [Rellick-Smith's] name from the … CDs." Complaint, 10/10/14, at ¶ 19. However, "[u]nder Pennsylvania's fact pleading system, the complainant need only state the material facts upon which a cause of action is based. Pa.R.C.P. 1019(a). The duty to discover the cause or causes of action rests with the trial court." *Grossman v. Barke*, 868 A.2d 561, 569 (Pa. Super. 2005) (citation omitted); *see also id.* at 568-69 (stating that "[e]ven though [the plaintiff] did not separate his factual allegations into separate counts specifying the legal theories underlying the complaint, the trial court was obligated to consider what causes of action were supported by the facts alleged."). Here, Rellick-Smith's Complaint, though terse, stated sufficient material facts upon which a cause of action could be based. *See id.* at 569. Rellick-Smith's above-mentioned assertion facially alleges a breach of fiduciary duty. *See*, *e.g.*, *In re Estate of Bechtel*, 92 A.3d 833, 839 (Pa. Super. 2014) (discussing breach of fiduciary duty in the context of an allegation of abuse of authority by an agent under a POA). Moreover, Vasil and Rellick did not object to the Complaint as being procedurally defective. *See Bartanus v. Lis*, 480 A.2d 1178, 1182 (Pa. Super. 1984) (holding that the defendants waived their claim that the plaintiff failed to properly divide complaint into separate counts for each cause of action asserted, where defendants did not challenge form of complaint in their preliminary objections).

limitations.[9]  The Defendants argued that the only persons who had standing to challenge an agent's actions under the POA agreement were the decedent (principal) prior to her death, or, thereafter, the personal representative of the decedent's estate.[10]  Rellick-Smith filed a Response to the Motion to Dismiss.  The Orphans' Court heard argument on the matter on May 12, 2015.[11]  By an Order entered on June 22, 2015, the Orphans' Court granted the Motion to Dismiss and issued an Opinion in connection with the Order,

---

[9]  The Motion to Dismiss was essentially in the form of a preliminary objection; we will treat it as such.  *See* Pa.R.O.C. 3.9(b)(5) (stating that lack of standing can be raised by preliminary objection).

[10] The Defendants also pointed to a previous decision of the Indiana County Court of Common Pleas in a case in the civil division involving essentially the same parties (hereinafter "the civil case").  Vasil and Rellick initiated the civil case, prior to the filing of the Complaint in the instant case, against Rellick-Smith and Annabell Marcoaldi ("Marcoaldi"), who had served as the decedent's accountant.  In the civil case, the trial court ruled that Vasil lacked standing to sue where the decedent, prior to her death, personally excluded Vasil as a beneficiary under a separate certificate of deposit account, observing that Pennsylvania law does not provide grounds for recovery on the basis of *inter vivos* transfers alleged to diminish an eventual bequest.  *See* Trial Court Opinion and Order (No. 11283 CD 2014), 5/18/15, at 7-9.  Vasil appealed the ruling in the civil case, and the appeal is listed before this panel at 884 WDA 2015.  Moreover, in their Answer filed in the instant case, the Defendants stated that "[Rellick-Smith's] name was removed[, *i.e.*, as a beneficiary under the CDs,] because she had acted inappropriately with respect to other [certificate of deposit] accounts [of the decedent,] as set forth in the [civil case] …."  Answer, 10/22/14, at 2 (unnumbered).

[11] The notes of testimony from this hearing are not contained in the certified record.  Accordingly, we asked our prothonotary to contact the trial court's prothonotary to obtain the transcript.  The trial court prothonotary responded that no transcript exists, as the hearing was apparently not transcribed.

ruling that Rellick-Smith lacked standing to sue. In response, Rellick-Smith timely filed a Notice of Appeal.

Rellick-Smith presents a single issue for our review: "Whether the [Orphans'] Court erred by determining that [Rellick-Smith] did not have standing[?]" Brief for Appellant at 7.[12]

In determining whether the Orphans' Court properly granted the Defendants' preliminary objections (*i.e.*, the Motion to Dismiss), we review the ruling for an error of law or abuse of discretion. ***In re B.L.J., Jr.***, 938 A.2d 1068, 1071 (Pa. Super. 2007). "On an appeal from an order sustaining preliminary objections, we accept as true all well-pleaded material facts set forth in the appellant's complaint and all reasonable inferences which may be drawn from those facts." ***Estate of Gentry v. Diamond Rock Hill Realty, LLC***, 111 A.3d 194, 198 (Pa. Super. 2015) (citation and brackets omitted). Preliminary objections seeking the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief; if any doubt exists, it should be resolved in favor of overruling the objections. ***Id.***

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***Johnson v. Am. Std.***, 8 A.3d 318, 326 (Pa. 2010).

---

[12] Neither party addresses on appeal the statute of limitations issue raised in the Defendants' Motion to Dismiss.

- 6 -

> In Pennsylvania, the doctrine of standing … is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. ***In re Hickson***, 573 Pa. 127, 821 A.2d 1238, 1243, (Pa. 2003)[; ***see also id.*** (stating that "[o]ur [] standing doctrine is not a senseless restriction on the utilization of judicial resources ….")]. For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been "aggrieved." … [T]he core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution to his challenge. A party is aggrieved for purposes of establishing standing when the party has a substantial, direct and immediate interest in the outcome of litigation. A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative.

***Office of Governor v. Donahue***, 98 A.3d 1223, 1229 (Pa. 2014) (quotation marks, brackets, and some citations omitted).

Rellick-Smith argues that the Orphans' Court committed an error of law in ruling that she lacked standing to sue the Defendants, and that only the decedent or her estate have standing to pursue an action against the Defendants for changing the beneficiaries of the CDs. ***See*** Brief for Appellant at 11-14.

The Orphans' Court offered the following reasoning in its Opinion for its ruling:

> Courts in this Commonwealth have held that when a principal has passed away, it is his/her estate, through a personal representative[,] who is [the] only party with standing to challenge the agent's actions.

> To this may be added that orderly procedure requires a strict adherence to the rule for only the *personal representative* of a deceased party in interest stands in the shoes of such decedent. Legatees, spouses or next of kin of that decedent really have no such interest[,] as Section 48 of the Fiduciaries Act of 1917 (20 PS ch. 3, app. 843) requires until[,] by an accounting[,] it is shown that all creditors or those having a prior claim have been satisfied and the distributees' rights fixed. To hold otherwise would impose on the court a preliminary or collateral inquiry as to whether the petitioner has[,] in fact[,] a possible interest as distributee that would be enlarged by any additional sum brought into the other estate by successful maintenance of the review.

*In re Kilpatrick Estate*, 84 A.2d 339, 341 (Pa. [] 1951) [(emphasis in original).]

*Kilpatrick* further elucidated the definition of "party in interest" within this very context.

> We do not agree with the argument of the learned counsel for the appellant that we should apply[,] to the phrase "by any party interested therein" in Section 48 of the Fiduciaries Act of 1917[,] the same definition as that contained in Section 17 of the Orphans' Court Act of 1917 (20 P.S. 2331)[,] which reads, "On petition to the court of any person interested, whether such interest be immediate or remote." An all[-]sufficient reason is that these two acts, though *in pari materia*, are providing for different things. Section 17 of the Orphans' Court Act, set forth at the beginning of that section immediately preceding the above quoted portion, provides for "the manner of proceeding in the orphans' court to obtain the appearance of a person amenable to its jurisdiction, and the procedure in default of appearance." Obviously a totally different matter from a review under Section 48 of the Fiduciaries' Act of an accounting already in the court. Had the legislature meant in the latter proceeding to permit anyone having a remote interest therein to have this special right, it would no doubt have said so.

- 8 -

[**_Kilpatrick_**, 84 A.2d at 341].

> Rellick-Smith has not pled that she is the personal representative of the [decedent's] estate, which would allow [Rellick-Smith] to request an accounting and audit of the agent's[, *i.e.*, Rellick and Vasil,] use of [their] authority under the [POA agreement]. Therefore, … Rellick-Smith does not have standing to contest the actions of [the Defendants], acting in [their] capacity as [the decedent's] agent[s]."

Orphans' Court Opinion, 6/22/15, at 4-5.[13]

In response to the Orphans' Court's above reasoning, Rellick-Smith argues as follows:

> To apply the ruling of **_Kilpatrick_** to the present facts would set a dangerous precedent. Here, [the decedent] specifically set aside the money in question from her estate. It was her plan[,] while working with her accountant[, Marcoaldi,] to have the money for [Rellick-Smith] and [the Defendants] in the CDs. The whole intention of the creation of the CDs was to avoid the money going into the estate. It therefore does not make any sense to suggest[,] as the [Orphans'] Court has in this case[,] that the only challenge to the actions of the agents must come from the personal representative of the [decedent's] estate.

Brief for Appellant at 13-14; **_see also id._** at 13 (arguing that **_Kilpatrick_** "involved a request of an account of an estate fourteen years after the individual had died, and shares very little[,] if anything[,] in common with the present case.").

---

[13] In so ruling, the Orphans' Court appears to have relied upon 20 Pa.C.S.A. § 3373 (governing actions by or against personal representative), which provides that "[a]n action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive."

The issue presented by Rellick-Smith is one of first impression in Pennsylvania. However, we are guided by the following persuasive authority. Section 58 of The Restatement (Second) of Trusts provides as follows:

> Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person[,] intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, *the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust*.

RESTATEMENT OF TRUSTS (SECOND), § 58 (emphasis added); *see also Estate of McFetridge*, 372 A.2d at 825 (relying upon section 58 and explaining Totten trusts).

Moreover, the treatise, Scott on Trusts, lends additional persuasive support for beneficiary standing, providing as follows concerning Totten trust accounts:

> Where a third person wrongfully withdraws money from the account before the death of the depositor and without his consent, the beneficiary can, after the death of the depositor maintain a suit against him for the money so withdrawn. The beneficiary had a sufficient interest during the life of the depositor to entitle him to recover the money after the death of the depositor where the trust was not revoked by the depositor.

Scott, Trusts (4th Ed. 1987) § 58.4, p. 224; *see also Silk v. Silk*, 295 N.Y.S. 517, 520 (N.Y. Sup. Ct. 1937) (holding that a Totten trust beneficiary has standing to sue for injury to his/her tentative property interest in the

funds held in the trust account after the death of the trust creator, where funds have been withdrawn during the creator's life, without consent or approval); *In re Guardianship of Medley*, 573 So. 2d 892, 907 (Fla. Dist. Ct. App. 4th Dist. 1990) (holding that Totten trust beneficiaries had standing to sue the bank/guardian that held the trust account funds following the death of the account co-owner/co-trustee ("wife"), where (1) the other co-owner/co-trustee ("husband") had unilaterally withdrawn funds from the accounts prior to his death, without wife's knowledge or consent; (2) it was the joint intent of wife and husband that the trust would not be revoked by such a withdrawal; and (3) husband and wife held the trust funds as tenants by the entireties).

In the instant case, accepting as true the allegations in Rellick-Smith's Complaint, the decedent created the CDs as a means for estate planning, and intended for the beneficiaries she named to equally share the account funds upon her death. The decedent never revoked the CDs nor personally changed the named beneficiaries. The Complaint averred that the Defendants abused their power, as the decedent's agents under the POA agreement, by changing the beneficiaries of the CDs, without the decedent's authorization. Complaint, 10/10/14, at ¶ 19. Thus, in determining whether Rellick-Smith had standing to sue the Defendants directly for breach of fiduciary duty as the decedent's agents, we consider whether the POA agreement authorized the Defendants to change the beneficiaries of the

- 11 -

CDs. The POA agreement authorized Rellick and Vasil to, *inter alia*, (1) "engage in banking and financial transactions"; (2) "handle interests in estates and trusts"; and (3) "make additions to an existing trust for [the decedent's] benefit." Complaint, 10/14/14, Exhibit A (POA Agreement), at 5, 6.

Power of attorney actions are governed by statute, 20 Pa.C.S.A. § 5601 *et seq.* (hereinafter "the POA Act"). The POA Act mandates that, as a fiduciary of the principal, an agent must at all times "[e]xercise [her] powers for the benefit of the principal." 20 Pa.C.S.A. § 5601(e)(1). Concerning an agent's "power to make additions to an existing trust," the POA Act provides, in relevant part, as follows: "The agent and the trust and its beneficiaries shall be answerable as equity and justice may require to the extent that an addition to a trust is inconsistent with … the known or probable intent of the principal with respect to disposition of his estate." *Id.* § 5603(c).[14] In the instant case, accepting the Complaint's allegations as

---

[14] On July 2, 2014, the General Assembly passed Act No. 2014-95, which amended the POA Act to include section 5601.4 (effective on January 1, 2015). That section provides, in relevant part, that "[a]n agent under a power of attorney may do the following on behalf of the principal or with the principal's property *only if the power of attorney expressly grants the agent the authority*[,] and exercise of the authority is not otherwise prohibited by another agreement or instrument to which the authority or property is subject: … Create or *change a beneficiary designation*." 20 Pa.C.S.A. § 5601.4(a)(4) (emphasis added). However, Act No. 2014-95 provides as follows concerning the application of its provisions: "Except as provided by this section, the provisions of this act apply to powers of attorney created before, on or after the respective effective dates of such provisions, *but do not apply to the acts or omissions of agents … that occur before such*

- 12 -

true, the decedent's intent was known, and the Defendants' actions in changing the beneficiaries of the CDs was inconsistent with that intent.

Based upon the foregoing, we conclude that Rellick-Smith, as a beneficiary of the CDs named by the decedent/principal during her life, had standing to challenge the propriety of the Defendants' unilateral action, as agents under the POA agreement, in changing the decedent's beneficiary designation, to the Defendants' benefit. ***See***, ***e.g.***, RESTATEMENT OF TRUSTS (SECOND), § 58; ***Silk***, ***supra***. To not afford named beneficiaries of a Totten trust standing to sue in circumstances such as those presented in the instant case could lead to an absurd and unjust result. Moreover, Rellick-Smith has met the above-mentioned requirements for standing discussed in ***Donahue***, ***supra***; she is certainly an aggrieved party as she has a substantial, direct and immediate interest in the outcome of this litigation.

In summary, the Orphans' Court erred in ruling that only the decedent or her personal representative had standing to challenge the Defendants' change of the beneficiary designation under the CDs. Accordingly, we vacate the Order granting the Defendants' Motion to Dismiss and remand for further proceedings.

Order vacated. Case remanded for further proceedings consistent with this Opinion. Superior Court jurisdiction relinquished.

---

*respective effective dates*." 2014 Pa. Laws 95 (HB 1429), Section 9(1) (emphasis added). Therefore, the prior version of the POA Act applies to the Defendants' changing of the beneficiaries under the CDs, which occurred in July 2009, long before the effective date of section 5601.4(a)(4).

Judge Stabile joins the opinion.

Judge Olson files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2016