J-A02018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHARLEEN M. RELLICK-SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BETTY J. RELLICK AND KIMBERLY V. | : | No. 630 WDA 2022 |
| VASIL | : | |

Appeal from the Order Entered April 22, 2022
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s): 31-14-0490

BEFORE:   BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED:  May 17, 2023**

Sharleen M. Rellick-Smith appeals from the order that dismissed for lack of standing her claims of breach of fiduciary duty brought against Betty J. Rellick and Kimberly V. Vasil (collectively "Defendants"), challenging actions they undertook as attorneys-in-fact for Rose Rellick ("Decedent").  We reverse and remand for further proceedings.

We begin with a summary of this case's protracted history.  Rellick is the sister of Decedent, while Vasil and Rellick-Smith are the daughters of another of Decedent's siblings.  In March 2006, Decedent granted power of attorney ("POA") to Rellick and Vasil.  In August 2006, Decedent created two certificate-of-deposit accounts ("CDs") at First Commonwealth Bank.  Each CD

_____

[*]  Retired Senior Judge assigned to the Superior Court.

had an initial value of approximately $150,000 and was issued to Decedent "or" Rellick "or" Vasil "or" Rellick-Smith. In 2009, Rellick and Vasil used the POA to remove Rellick-Smith's name from the CDs. Decedent died at the end of 2012, and Rellick and Vasil thereafter withdrew the money from the CDs, then totaling more than $350,000.

In October 2014, Rellick-Smith filed a complaint against Rellick and Vasil asserting that Defendants abused their POA and thwarted Decedent's intent that Rellick-Smith receive one-third of the value of the CDs upon her death. Defendants promptly filed an answer to the complaint raising no affirmative defenses. In February 2015, Defendants moved to dismiss the action alternatively because Rellick-Smith lacked standing to challenge Defendants' performance as Decedent's POA or that the statute of limitations barred the claims. The orphans' court concluded that Defendants had waived the statute of limitations defense by not including it in their responsive pleading, but agreed that Rellick-Smith lacked standing, and therefore dismissed the action.

On appeal, this Court treated Defendants' motion as preliminary objections. Accordingly, we deemed the factual allegations of Rellick-Smith's complaint to be true and applied the standard of review for preliminary objections, which requires us to affirm only if it was clear and free from doubt that Rellick-Smith would be unable to establish a right to relief. **See Rellick-Smith v. Rellick** ("**Rellick-Smith I**"), 147 A.3d 897, 901 (Pa.Super. 2016). Referencing the allegations of Rellick-Smith's complaint and the exhibits

- 2 -

thereto, this Court indicated that "the funds in the CDs were held 'in trust for' Rellick-Smith." *Id*. at n.5.  This Court concluded that Rellick-Smith, as a trust account beneficiary, had standing to challenge her removal from the CDs.  In particular, the *Rellick-Smith I* Court was persuaded that the beneficiary of a Totten trust account has "a sufficient interest during the life of the depositor to entitle him to recover the money after the death of the depositor where the trust was not revoked by the depositor" and a third party wrongfully removed money from the account "before the death of the depositor and without his consent."  *Id*. at 903 (quoting Scott, TRUSTS (4th Ed. 1987) § 58.4, p. 224). The Court therefore held as follows:

> [W]e conclude that Rellick-Smith, as a beneficiary of the CDs named by the decedent/principal during her life, had standing to challenge the propriety of the Defendants' unilateral action, as agents under the POA agreement, in changing the decedent's beneficiary designation, to the Defendants' benefit.  To not afford named beneficiaries of a Totten trust standing to sue in circumstances such as those presented in the instant case could lead to an absurd and unjust result.  Moreover, Rellick-Smith has met the [generally applicable requirements for standing]; she is certainly an aggrieved party as she has a substantial, direct and immediate interest in the outcome of this litigation.

*Id*. at 904 (cleaned up).  This Court did not consider the alternative argument that the statute of limitations barred Rellick-Smith's claim, noting that neither party addressed that issue on appeal.  *Id*. at 901 n.12.

On remand, the case was reassigned to a different judge of the orphans' court.  Defendants, through new counsel, filed a motion to amend their answer, seeking, *inter alia*, to raise the statute of limitations as an affirmative

defense. The orphans' court granted the motion, and the case proceeded to trial. In that proceeding, Rellick-Smith presented, *inter alia*, the testimony of Decedent's tax preparer, Ann Marcoaldi, who indicated that she advised Decedent to combine various accounts into the CDs as a testamentary device that Decedent would own during her lifetime and Rellick, Vasil, and Rellick-Smith would share equally upon Decedent's death, minimizing the inheritance tax. *Id*. at 20, 30, 40-41. Ms. Marcoaldi further indicated that she and Rellick-Smith learned in 2009 that Rellick had exercised the POA to remove Rellick-Smith from the CDs and undertook an investigation to learn why. *Id*. at 56-57, 77. Rellick-Smith testified that she brought this action to enforce Decedent's right to have her testamentary wishes honored by her POA agents. *Id*. at 149-50.

Defendants, for their part, sought to establish that Rellick-Smith lacked standing pursuant to the **Rellick-Smith I** exception to the general rule that only a personal representative may pursue the claims of a decedent. In that vein, they presented testimony from several witnesses to establish that the CDs were not Totten trust accounts, but rather joint accounts. *Id*. at 201-07, 220-25. Defendants also defended the substantive claim that they had breached their fiduciary duties to Decedent by introducing evidence that Rellick-Smith had been in dire financial straits before Decedent's death, that she had in 2009 cashed out a different CD on which her name appeared along with Decedent's name, and that in 2012 she had attempted to secure a

$135,000 mortgage on Decedent's interest in real property. *Id*. at 129-30, 161-74. Defendants took the position that removing Rellick-Smith's name from the CDs at issue was, under these circumstances, a proper exercise of their duty to protect Decedent's assets. *Id*. at 250-54.

Ultimately, the orphans' court credited Ms. Marcoaldi's testimony that Rellick-Smith learned in September 2009 that Defendants had removed her name from the CDs, and thus ruled that her 2014 claim for breach of fiduciary duty was barred by the two-year statute of limitations codified at 42 Pa.C.S. § 5524(7). This Court affirmed, holding that permitting Defendants to plead the statute of limitations as a defense after the prior judge had deemed it waived did not violate the law of the case doctrine, and that the finding that the claim was barred was supported by the record. *See Rellick-Smith v. Rellick* ("*Rellick-Smith II*"), 229 A.3d 390 (Pa.Super. 2020) (non-precedential decision at 6-10). However, our Supreme Court reversed this Court, concluding instead that the inconsistent rulings about Defendant's ability to belatedly raise a statute-of-limitations defense violated the coordinate jurisdiction component of the law-of-the-case doctrine. *See Rellick-Smith v. Rellick* ("*Rellick-Smith III*"), 261 A.3d 506, 518-19 (Pa. 2021) (Opinion Announcing the Judgment of the Court). Accordingly, our High Court remanded the matter to the orphans' court for further proceedings.

Following a post-remand status conference, the orphans' court requested and received supplemental post-trial briefs from the parties. Based

upon its review of the evidence offered at the 2018 trial, the orphans' court concluded that the CDs were joint accounts, not trust accounts, pursuant to 20 Pa.C.S. § 6303 (discussed fully *infra*). Therefore, the orphans' court concluded that Rellick-Smith lacked "standing to challenge the actions of Betty Rellick and/or Kimberly Vasil acting in the capacity of [Decedent's] agent pursuant to the [POA] executed by [Decedent.]" Orphans' Court Opinion, 4/22/22, at 22. Accordingly, the orphans' court dismissed Rellick-Smith's claim.

Rellick-Smith filed a timely notice of appeal, and both she and the orphans' court complied with Pa.R.A.P. 1925.[1] Rellick-Smith presents the following questions for our examination:

> I. Whether the [orphans'] court erred by determining that the Appellant did not have standing.
>
> II. Whether the [orphans'] court erred by failing to reach a decision on the merits of the action, and thus failed to grant Appellant appropriate relief.

Rellick-Smith's brief at 7 (cleaned up).

We begin with a review of the applicable legal principles. First, we note our standard of review:

> When an appellant challenges a decree entered by the orphans' court, our standard of review requires that we be deferential to the findings of the orphans' court.

---

[1] The orphans' court adopted its April 22, 2022 opinion as its Rule 1925(a) opinion. **See** Order, 6/16/22.

We must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Schwartz*, 275 A.3d 1032, 1033–34 (Pa.Super. 2022) (cleaned up).

The trial court disposed of Rellick-Smith's claim by ruling that she lacked standing to pursue a claim that Defendants breached their fiduciary duties owed to Decedent. "Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Rellick-Smith I*, *supra* at 901 (cleaned up).

We have summarized the generally-applicable rules of standing as follows:

In Pennsylvania, the doctrine of standing is a prudential, judicially-created principle designed to winnow out litigants who have no direct interest in a judicial matter. For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been "aggrieved." The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution to his challenge. A party is aggrieved for purposes of establishing standing when the party has a substantial, direct and immediate interest in the outcome of litigation. A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative.

- 7 -

*In re Nadzam*, 203 A.3d 215, 220-21 (Pa.Super. 2019) (cleaned up).

We thus begin by examining the nature of the underlying controversy and Rellick-Smith's connection to it. Although the pleadings were not a model of clarity, Rellick-Smith sought to litigate Decedent's claim that Defendants breached their fiduciary duties to Decedent. By statute, any action or proceeding to enforce a right of a decedent "may be brought by or against his personal representative alone or with other parties as though the decedent were alive." 20 Pa.C.S. § 3373. Our Supreme Court has long held that "**only** the personal representative of a deceased party in interest stands in the shoes of such decedent." *In re Kilpatrick's Estate*, 84 A.2d 339, 341 (Pa. 1951) (cleaned up, emphasis added). "Legatees, spouses or next of kin of that decedent really have no such interest[.]" *Id*.

It was on that basis that the orphans' court initially ruled that Rellick-Smith lacked standing to proceed in this action. *See* Orphans' Court Opinion, 6/22/15, at 4-5. However, this Court in *Rellick I* vacated that ruling and decided, as a matter of first impression, that a beneficiary of a tentative, or "Totten," trust account has standing to sue Defendants directly for a breach of duty owed to Decedent that caused injury to her tentative interest in the account. *See Rellick-Smith I*, *supra* at 903-04.

The orphans' court ultimately held that the CDs were not Totten trusts, but instead joint accounts as created and titled, as viewed by First Commonwealth Bank, and as defined by the Multiple-Party Account Act

- 8 -

("MPAA"). *See* Orphans' Court Opinion, 4/22/22, at 17. It discerned no evidence that Decedent had instead meant to fund the CDs in trust for Rellick, Vasil, and Rellick-Smith such that she intended to create Totten trust accounts. *Id*. Since the beneficiary standing recognized in *Rellick-Smith I* therefore did not pertain, the orphans' court concluded that Rellick-Smith lacked standing to challenge the actions of Decedent's POAs because the principal's right to enforce that fiduciary obligation passed exclusively to her personal representative. *Id*. at 21-22.

Rellick-Smith maintains that, regardless of the form of account, "all individuals named on the accounts or involved in their creation knew the clear intention of [Decedent] for the purpose of the account" was for the funds to be to shared equally among the three beneficiaries upon Decedent's death. *See* Rellick-Smith's brief at 17. Rellick-Smith insists that, since she presented clear and convincing evidence that Decedent's intent was "to have the money put in the CDs to be divided evenly between the parties" upon her death, Rellick-Smith "meets the standing burden established by the courts." *Id*. at 21, 23.

Rellick and Vasil argue that, although she does not explicitly state it, Rellick-Smith's position is "that despite the CDs being titled as joint accounts, there was clear and convincing evidence that [Decedent] intended the CDs to be Totten trust[s], and pursuant to 20 Pa.C.S. § 6303(a) the [orphans'] court should have found the CDs to be Totten trusts." Defendants' brief at 7

(cleaned up). Defendants assert that Rellick-Smith's arguments as to Decedent's intent are based upon viewing the evidence in a light most favorable to her position, while this Court must instead consider whether the certified record contains sufficient evidence to support the factual findings of the orphans' court. *Id*. at 8-11. Defendants maintain that Rellick-Smith failed to meet her burden of proving that Decedent "intended the joint accounts to be anything other than joint accounts," and, consequently, she lacked standing based upon *In re Kilpatrick's Estate* and its progeny. *Id*. at 11, 15-17.

Although she does not present the most straightforward argument, Rellick-Smith's position appears to be that, in deciding the issue of standing, the orphans' court and Defendants attach unwarranted importance on the type of multi-party accounts Decedent created. Instead, Rellick-Smith asserts that the issue is whether the Decedent's intent to utilize the CDs as testamentary devices to pass assets to Rellick-Smith imbued Rellick-Smith with a substantial, direct, and immediate interest in the outcome of litigation such that she is an aggrieved party with standing to sue.

The MPAA was "designed to reduce certain questions concerning many forms of joint accounts and the so-called Totten trust account." 20 Pa.C.S. § 6301 *Comment*. Pursuant to the MPAA, with exceptions not relevant here, any account with multiple parties is "either a joint account or a trust account." 20 Pa.C.S. § 6301. Those two types of accounts are defined as follows:

**"Joint account"** means an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship.

. . . .

**"Trust account"** means an account in the name of one or more parties as trustee for one or more beneficiaries where the relationship is established by the form of the account and the deposit agreement with the financial institution and there is no subject of the trust other than the sum on deposit in the account; it is not essential that payment to the beneficiary be mentioned in the deposit agreement. A trust account does not include a regular trust account under a testamentary trust or a trust agreement which has significance apart from the account, or a fiduciary account arising from a fiduciary relation such as attorney-client.

*Id*. The ownership of multi-party accounts while all implicated individuals are alive is governed by § 6303, which provides as follows:

**(a) Joint account.--**A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent.

**(b) Trust account.--**Unless a contrary intent is manifested by the terms of the account or the deposit agreement or there is other clear and convincing evidence of an irrevocable trust, a trust account belongs beneficially to the trustee during his lifetime, and if two or more parties are named as trustees of the account during their lifetimes beneficial rights as between them are governed by subsection (a). If there is an irrevocable trust, the account belongs beneficially to the beneficiary.

20 Pa.C.S. § 6303. Concerning the right of survivorship, the MPAA states:

**(a) Joint account.--**Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created. If there are two or more surviving parties, their respective ownerships during lifetime shall be in proportion to their previous ownership interests under section 6303 (relating

- 11 -

to ownership during lifetime) augmented by an equal per capita share for each survivor of any interest the decedent may have owned in the account immediately before his death; and the right of survivorship continues between the surviving parties.

**(b) Trust account.--**At the death of the trustee or the survivor of two or more trustees, any sum remaining on deposit belongs to the person or persons named as beneficiaries, if surviving, or to the survivor or survivors of them if one or more die before the trustee or last surviving trustee, unless there is clear and convincing evidence of a contrary intent; if two or more beneficiaries survive, there is no right of survivorship in event of death of any beneficiary thereafter unless the terms of the account or deposit agreement expressly provide for survivorship between them.

20 Pa.C.S. § 6304.

In the instant case, it is uncontroverted that Decedent created and funded the CDs as testamentary devices. Since she sought to minimize the inheritance taxes, Decedent opted to use joint "or" accounts, instead of trust accounts. *See* N.T. Trial, 12/3-4/18, at 40-41, 224-25. Plainly, the CDs, payable to Decedent or Rellick or Vasil or Rellick-Smith, were facially joint accounts as defined by the MPAA. *See* 20 Pa.C.S. § 6301. In that respect, the *Rellick-Smith I* Court's acceptance, for purposes of deciding preliminary objections, that the CDs were trust accounts was ultimately incorrect.

However, the distinctions between joint accounts and trust accounts do not warrant a different standing analysis. As indicated above, the *Rellick-Smith I* Court was persuaded by the following reasoning:

Where a third person wrongfully withdraws money from the account before the death of the depositor and without his consent, the beneficiary can, after the death of the depositor maintain a suit against him for the money so withdrawn. The beneficiary had

- 12 -

a sufficient interest during the life of the depositor to entitle him to recover the money after the death of the depositor where the trust was not revoked by the depositor.

***Rellick-Smith I***, ***supra*** at 903 (quoting Scott, Trusts (4th Ed. 1987) § 58.4, p. 224).

This Court offered the following description of a trust account:

One who deposits money in a savings account in her own name in trust for another establishes a Totten trust. The name is derived from ***In re Totten***, the New York Court of Appeals decision widely credited with first conceiving the notion of a tentative trust. A Totten trust allows the depositor to retain complete control of the fund during his life and yet secure to the beneficiary any balance standing in the account at the death of the depositor. Totten trusts are essentially a poor man's will, a judicial creation that, strictly speaking, is neither a will nor a trust but are fairly obviously testamentary transfers.

***Rellick-Smith I***, ***supra*** at 899 n.5 (cleaned up, emphasis added). Our Supreme Court also described a joint account as "a poor man's will."

***Deutsch, Larrimore & Farnish, P.C. v. Johnson***, 848 A.2d 137, 142 (Pa. 2004). In ***Deutsch***, the High Court explained:

One who knowledgeably creates a joint account with another arguably does so with the present intent to employ the account's survivorship characteristic in substitution for a testamentary device. Furthermore, accounts with right of survivorship provisions are often set up to allow caretakers to assist senior citizens with the management of their finances. Their well-planned financial protection can best be honored by adhering to the statutory presumption created by [§] 6303. Like other testamentary devices, creation of a joint account, without more, accomplishes no present transfer of title to property. If, as in this case, one person deposits all sums in the joint account, this arrangement contemplates transfer of title to those funds to the other person or persons named on the account upon the death of the depositor. Moreover, the creator of a joint account, like the maker of a will and unlike the giver of a gift, may change his or

her mind prior to death. These considerations suggest that joint accounts share more in the character of testamentary devices than they do in the character of present transfers of property, or gifts.

*Id*. at 143-44 (cleaned up).

Hence, the two types of MPAA accounts are both testamentary in nature, with the depositor retaining ownership of the account funds during her lifetime while identifying beneficiaries who will take ownership of the assets upon the depositor's death outside the probate process. The difference between the two is whether the depositor wishes to be the only person with access to the account during her lifetime, or whether the death beneficiaries will also have access to the funds while they are still owned by the depositor. We fail to see how this difference gives the tentative beneficiary of a joint account any less of "a substantial, direct and immediate interest" in litigating the depositor's claim for breach of fiduciary duty against her POA agents than the tentative beneficiary of a trust account. ***Rellick-Smith I***, ***supra*** at 904. Both types of beneficiaries have the same "sufficient interest during the life of the depositor to entitle him to recover the money after the death of the depositor where the [account] was not revoked by the depositor." ***Id***. at 903 (quoting Scott, TRUSTS (4th Ed. 1987) § 58.4, p. 224).

We therefore conclude that ***Rellick-Smith I***'s ultimate holding still controls despite the well-founded conclusion of the orphans' court that the CDs were joint accounts rather than trust accounts. Specifically, we re-phrase that holding as follows: Rellick-Smith, by virtue of having been granted a right

of survivorship in the CDs by Decedent during Decedent's life, had standing to challenge the propriety of the Defendants' unilateral action, as agents under the POA, in terminating Rellick-Smith's survivorship interest to benefit themselves rather than Decedent. **Compare with Rellick-Smith I**, **supra** at 904 ("Rellick-Smith, as a beneficiary of the CDs named by the decedent/principal during her life, had standing to challenge the propriety of the Defendants' unilateral action, as agents under the POA agreement, in changing the decedent's beneficiary designation, to the Defendants' benefit.").

Accordingly, we are constrained to remand this case to the orphans' court yet again for further proceedings. Specifically, the orphans' court must decide the merits of Rellick-Smith's claim that Defendants violated their fiduciary duties to Decedent by removing Rellick-Smith as a party to the CD accounts. We leave it to the sound discretion of the orphans' court whether it needs to receive additional evidence or briefing on the matter or whether it can make a determination based upon the record already created.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Pellegrini joins this Memorandum.

Judge Murray concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/17/2023