J-A27017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHANICE RICHARDSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARMEN EZZO AND DANIEL E. | : | No. 178 EDA 2024 |
| DUFFY | | |

Appeal from the Judgment Entered January 3, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  221001740

BEFORE:  BOWES, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:                    **FILED DECEMBER 23, 2025**

Shanice Richardson (Appellant) appeals from the judgment entered following the trial court's non-jury determination in favor of Carmen Ezzo and Daniel E. Duffy (Landlords), in this action filed pursuant to the Philadelphia Lead Disclosure and Certification Ordinance (the ordinance).[1]  Because we conclude Appellant lacked statutory standing to file an action under the ordinance, we affirm.

On September 15, 2016, Appellant and Landlords executed a residential lease agreement for a rental property located on Cottman Avenue in Philadelphia, Pennsylvania (the premises).  The lease agreement specified a start date of September 1, 2016, and an end date of August 31, 2017.

_____

[1] Phila. Code, Chapter 6-800.

Complaint, 10/20/22, Exhibit A (lease agreement), ¶ 4. The lease agreement also contained a renewal provision whereby the lease would automatically renew on a month-to-month basis unless either Appellant or Landlords provided 30 days' written notice. *Id.*, ¶ 5. Shortly after executing the lease agreement, Appellant and her one-year-old son moved into the premises.

Landlords initiated eviction proceedings against Appellant in August 2018, December 2019, and August 2022. Most recently, in August 2022, Landlords initiated eviction proceedings against Appellant, citing Appellant's failure to pay rent beginning in November 2021. *See* Landlords' Preliminary Objections, 12/1/22, Exhibit D (municipal court landlord-tenant complaint). Ultimately, in the eviction action, the parties entered into a judgment by agreement on October 11, 2022, whereby Appellant was required to vacate the premises before November 10, 2022; Landlords would withdraw their claim for rent; and Landlords were entitled to keep Appellant's security deposit. *See id.*, Exhibit E (judgment by agreement).

On October 20, 2022, after having received the benefit of the judgment by agreement, Appellant initiated the underlying action by filing a complaint alleging Landlords' violation of the ordinance under Section 6-803. *Id.*, ¶¶ 7, 18; *see also id.*, ¶ 8 (asserting Landlords knew Appellant's son would be residing at the premises, as he was present during the walk-through). Appellant alleged Landlords never provided her with the requisite lead-free or lead-safe certification under Section 6-803, and Landlord never asked her to

sign a certification. *Id.*, ¶¶ 12-13, 20. *But see id.*, ¶ 15 (acknowledging a lead certification for the premises dated February 21, 2022, which does not contain Appellant's signature). Appellant sought the return of all rent she had paid to Landlords (totaling $50,616.47), plus attorneys' fees and $2,000.00 in exemplary damages. *Id.*, ¶¶ 26-28.

On December 1, 2022, Landlords filed preliminary objections to Appellant's complaint, seeking dismissal of the action for lack of subject matter jurisdiction. Landlords argued that Appellant failed to provide a 10-day written notice of the defect to Landlords, as required by Section 6-809(2)(a)[2] the ordinance. Additionally, Landlords argued the ordinance does not govern lease renewals.

Appellant subsequently filed preliminary objections to Landlords' preliminary objections, asserting Landlords' preliminary objections were

---

[2] We observe that Landlords cite Section 6-809(2), which pertains to remedies for violations under Section 6-804 (Right to Conduct Independent Inspection or Risk Assessment and Right to Rescind) of the ordinance. *See* Phila. Code § 809(2) (2012 Edition); *see also id.* § 809(2)(a) (providing that a lessee who has not received disclosure under Section 6-804 must notify the lessor of the non-compliance in writing, and the "lessor shall have ten (10) days to remedy the non-compliance after which his/her failure to comply shall entitle the lessee to bring a court action for all appropriate relief."). As Appellant did not allege a violation of Section 6-804, the remedies provision under Section 6-809(2)(a) is not applicable in this matter.

untimely filed.[3]    Separately, Appellant filed an answer to Landlords' preliminary objections.

On March 21, 2023, the trial court entered an order overruling Appellant's preliminary objections. The trial court issued a second order on the same date, sustaining Landlords' preliminary objections and dismissing Appellant's complaint.

Appellant promptly filed a motion for reconsideration, which the trial court granted in part and denied in part. The trial court granted reconsideration of—and vacated—the order sustaining Landlords' preliminary objections; the court denied reconsideration of the order overruling Appellant's preliminary objections.

On April 24, 2023, Landlords filed an answer to Appellant's complaint and new matter. In their new matter, Landlords averred, in part, that the parties executed the lease agreement in September 2016, and the lease contained an automatic renewal provision. *See* Answer and New Matter, 4/24/23, ¶¶ 35-36. Landlords asserted Appellant failed to comply with the 10-day notice requirement of Section 809(2)(a). *Id.*, ¶ 43. In support of its

---

[3] Pennsylvania Rule of Civil Procedure 1026(a) provides that "every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading…." Pa.R.C.P. 1026(a). Here, despite Appellant filing her complaint in October, the record reflects that Landlords were not served with the complaint until November 22, 2022. *See* Sheriff's Return of Service, 11/22/22. Landlords therefore promptly filed their preliminary objections within twenty days after service of the complaint.

assertions, Landlords cited this Court's decision in **Hand v. Fuller**, 294 A.3d 468 (Pa. Super. 2023) (addressing the applicability of the ordinance to renewal leases and the 10-day notice requirement for tenants alleging violations).[4]  Appellant filed a reply.

Landlords later filed a motion for judgment on the pleadings, which the trial court denied.  The matter was scheduled for a non-jury trial, to begin on November 14, 2023.  According to Appellant,

> [o]n the evening of November 13, 2023, [Appellant's] counsel received an email communication from counsel for Landlord[s,] stating that due to a medical emergency, the trial scheduled for the next day would need to be continued.  [Appellant's] counsel promptly indicated to Landlord[s'] counsel that there was "no objection to a continuance based upon the circumstances."
>
> On November 14, 2023, both counsel appeared.  [Appellant] did not appear based upon Landlord[s'] prior notice that they would seek a continuance of the trial.  …
>
> After a brief colloquy with the [c]ourt (which colloquy does not appear in the transcript), counsel were instructed to go into the hallway and see what stipulations could be made[,] as the [c]ourt was inclined to decide the case on trial briefs to be submitted.

Appellant's Brief at 7-8 (citations to reproduced record omitted).[5]

The parties stipulated to the following facts:

_____

[4] We will address the **Hand** decision more fully *infra*.

[5] As Appellant points out, the transcripts from the November 14, 2023, hearing do not include the described colloquy or the stipulations entered by the parties.  Landlords do not dispute Appellant's characterization of events at the hearing.  **See** Landlords' Brief at 13 (acknowledging medical emergency and intention to seek continuance).

- The residential lease was entered into between [Appellant] and [Landlords] on or about September 15, 2016[,] for the [premises];

- [Appellant] moved into the premises with her then 1[-]year[-]old son;

- [Landlords] were aware there was a child under the age of seven (7) living in the premises with [Appellant];

- The premises was built before March 1978;

....

- The lead-safe certification form for the premises is dated February 21, 2022;

- The lead-safe certification was never given to [Appellant] by [Landlords];

- [Appellant] did not give a 10-day notice to [Landlords];

- The 2012 Amendments to the [ordinance] … apply to [Appellant's] lease;

- [Appellant's] complaint … is brought under Section 6-803(3) and 6-809(3) of the Philadelphia Code, as amended in 2012;

- [Appellant] entered into judgments by agreement [] in Philadelphia Municipal Court;

- The amount of rent paid to [Landlords] by [Appellant] or on her behalf from September 2016 to the present is $50,687.22 …; [and]

- The portion of the $50,687.22 paid to [Landlords] by third parties is $10,080.00.

Appellant's Trial Brief, 11/24/23, at 1-2 (footnote omitted; some capitalization modified); *see also* Landlords' Brief at 14-17 (largely confirming the stipulations as set forth by Appellant, and adding that a 2021 inspection

produced a negative test for lead in the premises). *But see* Landlords' Brief at 15 (stating the lease agreement does not list the names or ages of the occupants, but acknowledging Landlords "eventually became aware that a child resided" in the premises).

On November 29, 2023, the trial court entered a "finding for [Landlords,] as [Appellant] did not have statutory standing at the time the claim was asserted." Trial Work Sheet, 11/29/23 (citing *Hand*, *supra*). Appellant filed a motion for reconsideration[6] on December 5, 2023, challenging, in part, the trial court's application of *Hand*. By an order dated December 18, 2023,[7] the trial court denied reconsideration and set forth the following findings:

1. [Appellant] did not seek a continuation of the trial due to her inability to attend;

---

[6] Following a civil non-jury trial, **a party must file post-trial motions** within 10 days of the entry of the trial court's decision. Pa.R.C.P. 227.1(c)(2). On April 8, 2024, this Court issued an order directing Appellant to show cause why her issues should not be deemed waived, as a result of filing a motion for reconsideration rather than a post-trial motion. In response, Appellant argued that notwithstanding the title she ascribed to her filing, she intended the motion to function as a post-trial motion. This Court subsequently discharged the show-cause order. On review, we conclude Appellant's motion for reconsideration (which alleged an erroneous application of the *Hand* decision) was intended to perform the same function as a post-trial motion. *See De Lage Landen Fin. Servs., Inc. v. Rozentsvit*, 939 A.2d 915, 923 (Pa. Super. 2007) (declining to quash or dismiss appeal where party's post-trial "petition to assess collection and legal costs" was intended to perform the same function as a post-trial motion under Rule 227.1).

[7] The order was docketed on December 19, 2023.

2. [Appellant's] extra-record submissions in her post-trial motion seeking to excuse her failing to attend relate to a trial date earlier than the date upon which the trial was held and were not entered into the record at trial;

3. The record does not establish as a matter of fact that [Landlords] "knew" that [Appellant] was residing in the [premises] with a child;

4. In fact, the lease does not list any additional residents other than [Appellant];

5. [Appellant] was not a lessee at the time of filing this lawsuit:

a. [Appellant] had resolved a landlord tenant action with [Landlords] prior to filing suit, pursuant to which the court ordered possession returned to [Landlords] as of the date of the settlement—October 11, 2022;

b. While [Appellant] was given an additional 30 days to vacate the premises, she no longer had any legal rights under the lease and the accommodation was a matter of the settlement, not a right under a lease;

c. [Appellant] did not raise any issue related to lead during the landlord tenant proceeding, but, rather, waited until she had obtained a settlement resolving certain matters of unpaid rent and obtaining a release from her obligations to [Landlords];

d. Once released from those obligations and agreeing that [Landlords were] entitled to possession, [Appellant] lacked standing to pursue a lead paint disclosure claim;

e. [Appellant] "retaining" a right to pursue a monetary claim does not alter her status or specifically endorse or preserve a lead paint disclosure claim and cannot revive her terminated lease or her agreement to grant legal possession to [Landlords].

Order, 12/18/23.

Thereafter, on January 3, 2024, Appellant filed a praecipe for entry of judgment. Judgment was entered on the same date. Appellant filed a notice

- 8 -

of appeal on January 10, 2024.[8]  Appellant and the trial court have complied

with Pa.R.A.P. 1925.

Appellant raises the following issues for review:

1. Did the trial court err in not continuing the trial based upon [Landlords'] last minute notice that they would not be able to go forward with the trial and that they would be requesting a continuance due to a medical emergency, where, but for the assertion that a continuance would be requested by [Landlords], [Appellant] would have been ready and able to appear?

2. Did the trial court err in not continuing this matter for trial based upon a dispute of a material fact required under the [ordinance] (which [Appellant] was led to believe was undisputed)?

3. Did the trial court err in applying the 1995 version of the [ordinance,] which has a notice requirement (which version was applicable to the initial 2002 lease in *Hand* …), instead of the 2012 version of the [ordinance], which has no 10-day notice requirement for cases proceeding under Section 6-809(3) for violations of Section 6-803?

4. Did the trial court err in finding for [Landlords] based upon [Landlords'] continuous erroneous argument throughout this case that [Appellant] was proceeding under Section 6-809(2), when [Appellant] was actually proceeding under the separate and independent Section 6-809(3)?

5. Did the trial [c]ourt err in not recognizing that the *Hand* decision is distinguishable from [Appellant's] case[,] where the initial lease in *Hand* was entered into in 2002 and the 1995 version of the [ordinance] applied thereto?

_____

[8] Appellant purported to appeal from the December 18, 2023, order denying her motion for reconsideration.  However, an appeal properly lies from the entry of judgment.  *See Hart v. Arnold*, 884 A.2d 316, 325 n.2 (Pa. Super. 2005).  As judgment was ultimately entered, there are no jurisdictional impediments to our review.

- 9 -

6. Did the trial court err in failing to recognize that Appellant was the tenant of the premises after the 2020 Amendments to the [ordinance] took effect, and had a claim thereunder?

Appellant's Brief at 4-6.

Preliminarily, we review the trial court's conclusion that Appellant lacked standing to bring an action under the ordinance. Standing is a threshold issue which we must resolve before addressing the merits of Appellant's claims. *See Rellick-Smith v. Rellick*, 147 A.3d 897, 901 (Pa. Super. 2016) ("The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge.") (citation and brackets omitted). As standing concerns raise questions of law, our standard of review is *de novo*, and our scope of review is plenary. *Id.*

Our review requires interpretation of the ordinance. "An ordinance, like a statute, must be construed, if possible[,] to give effect to all of its provisions." *Hand*, 294 A.3d at 473 (citation and some brackets omitted).

Appellant seeks relief under the ordinance, which "was enacted in 1995 to assist the Department of Health in identifying, reducing, and combating lead poisoning in Philadelphia children." Phila. Code § 6-801(8) (Current Edition);[9] *accord Hand*, 294 A.3d at 472. The ordinance pertains to

_____

[9] Bill No. 180936-A modified portions of the ordinance, and became effective on October 1, 2020.

- 10 -

residential housing constructed prior to 1978, which often contains lead-based paints, and comprises the "most significant remaining source of environmental lead…." Phila. Code § 6-801(5).[10]

The parties stipulated that the 2012 Edition[11] of the ordinance controls.

The 2012 Edition defines "Targeted Housing" as follows:

> For purposes of this Chapter relating to lease agreements, residential property built before March 1978, but excluding: … (d) dwelling units in which children aged six (6) and under do not and will not reside during the lease term.

Phila. Code § 6-802(12) (2012 Edition).

Section 6-803 details a lessor's lead disclosure obligation for rental properties:

> (a) No lessor shall enter into a lease agreement with a lessee, other than a renewal lease, to rent any Targeted Housing, or a unit in such Targeted Housing, unless (.1) he or she provides the lessee with a valid certification prepared by a certified lead inspector stating that the property is either lead free or lead safe; and (.2) the lessee acknowledges receipt of the certification by signing a copy.
>
> (b) A valid certification that a property is lead safe under this section shall state that the certified lead inspector determined that the property or unit was free of any Deteriorated Paint, and that interior dust samples were collected in compliance with EPA regulations …, were tested and were found not to contain Lead-Contaminated Dust as defined in this Chapter. …

_____

[10] The ordinance has been amended several times. However, there has been no substantial change to these particular provisions as cited.

[11] The 2012 amendments are contained in the February 2014 Cumulative Supplement, which Landlords attached to their preliminary objections as Exhibit F. For simplicity, we will refer to this version of the ordinance as the 2012 Edition.

*Id.* § 6-803(3)(a), (b).

When a lessor does not comply with Section 6-803, the ordinance permits lessees to seek remedies including, *inter alia*, exemplary damages up to $2,000; "abatement and refund of rent for any period in which the lessee occupies the property without a certification having been provided;" and attorney's fees and costs. *Id.* § 6-809(3).

Significantly, this Court has held that "the ordinance does not provide a remedy for a **former lessee** to retroactively sue a **former lessor** who did not provide the required disclosure at the time the lease was signed." *Hand*, 294 A.3d at 479 (emphasis in original); *see also Cooper v. SGYS St. Ives, LLC*, 333 A.3d 1046, 1052 (Pa. Super. 2025) (reiterating that this Court in *Hand* found the ordinance applies only to *current* tenants).[12] This Court indicated its agreement with Judge Rau's interpretation, and her statement that "the ordinance was not intended to permit former lessees to retroactively recoup rent after a lease agreement has been satisfactorily completed when

_____

[12] In concluding the ordinance applies to current leases, the *Hand* Court cited with approval the Philadelphia Court of Common Pleas decision in *Houston v. Analaris Homes, LLC*, 3523 EDA 2018, 2019 WL 419489 (Pa. Com. Pl. Jan. 30, 2019). In *Houston*, the Honorable Lisa M. Rau analyzed the text of the ordinance, emphasizing the repeated references to "lessor" and "lessee." *Hand*, 294 A.3d at 478 (citing *Houston*, 2019 WL 419489 at *7). Judge Rau concluded "the technical and ordinary usages of these terms preclude a claim when there is no existing lessor-lessee relationship." *Id.* (citing *Houston*, 2019 WL 419489 at *7).

no issues were raised during the existence of the lease." ***Hand***, 294 A.3d at 479 (citing ***Houston***, 2019 WL 419489 at *9).

Based upon the foregoing interpretation of the ordinance, we agree with the trial court's conclusion that Appellant lacked statutory standing to bring a claim under Section 6-803(3). It is undisputed that Landlords initiated eviction proceedings against Appellant on three separate occasions. It is also undisputed that the parties entered a judgment by agreement on October 11, 2022. Landlords' Preliminary Objections, 12/1/22, Exhibit E (judgment by agreement). The judgment by agreement specified Landlords would accept "Judgment for Possession only as of: 10-11-2022." ***Id.*** Though the agreement permitted Appellant an additional month to vacate and remove her property from the premises, any rights Appellant enjoyed as a "tenant" concluded upon the entry of judgment for possession. ***Cf. Cooper***, 333 A.3d at 1053-54 (concluding that the appellants were "tenants" under the ordinance, despite being in breach of their lease, because the lease contained an automatic renewal provision requiring 60 days' written notice of non-renewal, and appellee-landlord did not take action to terminate the lease, evict the appellants, or sue appellants for unpaid rent). Despite the renewal term in Appellant's lease, Landlords took actions to evict Appellant, and agreed to forego their claim for unpaid rent. When Appellant filed the underlying complaint just nine days later, she was no longer a tenant, as required by the ordinance.

Based upon the foregoing, the trial court properly concluded Appellant lacked standing to commence the instant action. We therefore affirm the judgment in favor of Landlords.

Judgment affirmed.

Judge Beck joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/23/2025</u>