**FRANK v. BLUMBERG.**

Civ. No. 7452.

District Court, E. D. Pennsylvania.

Aug. 4, 1948.

John C. Noonan, of Philadelphia, Pa., for plaintiff.

C. Russell Phillips, Herman E. Wenograd and Montgomery, McCracken, Walker & Rhoads, all of Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

1. Plaintiff, Mark K. Frank, is an iron and steel merchant with places of business in Reno, Nevada; Pittsburgh, Pennsylvania, and New York, New York.

2. Defendant, Theodore Blumberg, is a citizen and resident of the State of Pennsylvania, and at the time of the sale in this case was engaged in business in Philadelphia under the corporate name of L. Blumberg's Son, Inc.

3. The matter in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

4. On November 6, 1946, the electric railway assets of Fairmount Park Transit Co., later Philadelphia Park Amusement Co., were sold at public auction by Samuel T. Freeman and Co., pursuant to a notice duly published giving details as to assets to be sold and the terms of the sale. The sale took place at the car barn of Fairmount Park Transit Co., later Philadelphia Park Amusement Co., in Fairmount Park, Philadelphia.

5. Plaintiff came to the sale to bid for the traction line. He had never met either defendant or his general manager, John Russo, prior to the sale. He met Russo at the sale, but did not meet defendant until after the sale, although he knew of his

business and of Russo's relationship to it. Defendant was present at the sale.

6. While at the sale, plaintiff made an arrangement with Russo under which Russo was not to compete in the bidding. A short time later, it was agreed that Russo should bid and plaintiff would not compete. Thereafter, plaintiff made only an initial or puffing bid. Plaintiff hoped to purchase the rails back from the company Russo represented after it had bought the entire traction line at the auction.

7. This agreement had for its primary purpose the suppression of competition at the sale.

8. There was no agreement of partnership or joint purchase between plaintiff and Russo.

9. John Russo for a high bid of $50,000 acquired the park trolley line. His bid was on behalf of L. Blumberg's Son, Inc., a Pennsylvania corporation, which paid the deposit of $12,500 by check signed by its president, Theodore Blumberg.

10. After L. Blumberg's Son, Inc. acquired the contract to remove the trolley line, it offered it in a hotel room for resale among its competitors. Plaintiff bid approximately $55,500 for property of which he allegedly was a half-owner, without disclosing any claim of such half-ownership.

11. Since November 6, 1946, defendant has treated the assets acquired at the sale as his own individual property and has refused to permit plaintiff to have any voice whatsoever in the disposition of them.

12. Since November 6, 1946, defendant, either himself or through his corporate nominee, L. Blumberg's Son, Inc. has disposed of the assets acquired on November 6, 1946, and has declined to furnish to plaintiff information regarding the disposition of the assets and the amounts received for them.

### Discussion.

The applicable Pennsylvania law clearly indicates that a bargain not to bid at an auction having as its primary object the stifling of competition is illegal. Cf. Hays Estate, 159 Pa. 381, 28 A. 158; Kuhn v. Buhl, 251 Pa. 348, 96 A. 977, Ann.Cas. 1917D, 415; Constructors Ass'n of Western Pennsylvania v. Seeds, 142 Pa.Sup. 59, 15 A.2d 467; Restatement, Contracts, Sec. 517. I feel that the evidence establishes that this was the character of the agreement in the instant case. Plaintiff came to the sale in Philadelphia to bid for the traction line. He talked with Russo at the sale and suggested that there was no need that they be competitors. An impromptu deal was arranged under which plaintiff would make only a puffing bid and could expect friendly treatment on the resale of the rails. Its obvious primary purpose was to prevent active competition at the public sale. It may well be that defendant was a party to more than one such deal. All of the evidence in the case so indicates that the entire sale reeked with agreements to rig, postponing actual competition until the back-room sale later on, that the defrauded stockholders or creditors might well seek legal relief, civil or criminal. But, I do not think that the bargain in the instant case is the sort that will move a court of equity to declare a trust ex maleficio, which, as plaintiff's brief points out, is supposed to reflect the conscience of equity.

I have not made an explicit finding on the citizenship of plaintiff, because I do not think it necessary for disposition of the case to decide the jurisdictional issue. Were that question controlling, I would require further hearing and evidence. On the scanty evidence now before the Court on that issue, it is probable that diversity of citizenship exists. It is also unnecessary to decide whether any contract enforceable against defendant could have been made by plaintiff and Russo. The scope of the latter's real or apparent authority is not controlling where the agreement reached is for other reasons unenforceable.

### Conclusions of Law.

1. The agreement upon which plaintiff relies in the instant case is against public policy.

2. On all the evidence, judgment should be entered for defendant.