**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF JOHN J. THOMAS, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ESTATE OF JOHN J. THOMAS, DAVID J. GEORGE, JAMES H. GEORGE, JR. AND ANNA MARIE RHEINGROVER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1297 WDA 2023 |

Appeal from the Orders Entered September 5, 2023
In the Court of Common Pleas of Beaver County Orphans' Court at
No(s): No. 04-14-1068

BEFORE: OLSON, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: OCTOBER 24, 2024**

The Estate of John J. Thomas ("the Estate"), by the majority of its co-administrators, David J. George, James H. George, Jr., and Anna Marie Rheingrover, along with David J. George, James H. George, Jr., and Anna Marie Rheingrover, as beneficiaries and heirs (collectively "Appellants") appeal from two separate orders dated August 31, 2023, and entered on September 5, 2023, in the Court of Common Pleas of Beaver County Orphans' Court.[1]

---

[1] Generally, when a party seeks to appeal from two separate orders entered at the same docket number, the party must file two separate notices of appeal. *Dong Yuan Chen v. Saidi*, 100 A.3d 587, 589 n.1 (Pa. Super. 2014). *But see Betz v. Pueumo Abex, LLC*, 44 A.3d 27, 54 (Pa. 2012) (explaining that because "an appeal of a final order subsumes challenges to previous interlocutory decisions[,]" an appellant need only file one notice of appeal). Here, Appellants have filed only one notice of appeal, but indicated therein their intention to appeal from two separate orders, which the trial court entered on the same day. Although this practice is discouraged, we decline to quash this appeal, as no party has objected to Appellants' having filed only

*(Footnote Continued Next Page)*

The first order declared that Attorney Richard Joseph is entitled to $851,505.00 in attorneys' fees, plus 40% of any Estate assets, as well as an attorney's charging lien against the Estate. The second order directed the escrow agent, Aligned Partners Trust Company, to pay Attorney Joseph the full amount owed to him immediately, and reiterated that Attorney Joseph is entitled to 40% of any Estate assets. After careful review, we vacate the orders and remand with instructions.

## I. Background

This case has a long, complex history and stems from a will contest. We glean the following relevant background from the record. John J. Thomas ("Decedent") died on October 12, 2014, and is survived by eight nieces and nephews.[2] Following the Decedent's death, Timothy Ungarean, second cousin of the Decedent, offered for probate a document, dated July 7, 2014, which purported to be the last will and testament ("Will") of the Decedent and named Mr. Ungarean as the sole beneficiary of the Estate. On October 23, 2014, the Beaver County Register of Wills admitted the Will to probate and issued letters testamentary to Mr. Ungarean. Alleging forgery of the Will, the Heirs, by and

_____

one notice of appeal from the two orders, and because the statutory period for taking an appeal has already expired, precluding the filing of proper appeals. *Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.*, 263 A.2d 448, 453 (Pa. 1970).

[2] The Decedent's eight surviving nieces and nephews are: Theresa A. Thomas, Carol L. Thomas, Norman J. Thomas, Anna Marie Rheingrover, David J. George, Alex C. George, Charles T. George, and James H. George, Jr. (collectively "the Heirs").

through their counsel, Attorney Joseph, filed an appeal from probate, challenging the validity of the Will and seeking to have the letters testamentary revoked. Following discovery and pre-trial proceedings, an evidentiary hearing was held on June 27, 2016, before the Honorable John D. McBride. However, Judge McBride was subsequently ordered to recuse himself, and the Pennsylvania Supreme Court ultimately appointed the Honorable Paul F. Lutty, an out-of-county judge, to preside over this case. *See In re Estate of Thomas*, 2020 WL 1079252, at *1 (Pa. Super. Mar. 6, 2020) (unpublished memorandum) (citing Pa.R.J.A. 701(C)(2) (explaining the process by which assignment of another jurist is made in order "to serve the interest of justice")).

A non-jury trial commenced before Judge Lutty in October of 2018 and concluded in January of 2019. After considering the testimony presented at trial and reviewing the deposition transcripts of the witnesses, as well as the transcripts of the prior Beaver County proceedings, Judge Lutty determined that the Will purportedly executed by the Decedent on July 7, 2014, as well as all other documents purportedly signed by him on that date, were invalid. *See* Order, 4/2/19, at 2 (agreeing with the handwriting expert that the signatures on the Will and accompanying documents were not the Decedent's and finding the only witnesses to the signing of the Will "not credible"). Consequently, Judge Lutty concluded that the letters testamentary must be revoked. *Id.* He further determined that the Decedent, "having made no will

during his lifetime, died intestate[ and that h]is Estate shall legally pass on to his intestate [H]eirs…." *Id.*[3, 4]

Subsequently, Attorney Joseph filed a petition for counsel fees, seeking payment in accordance with a fee agreement that he had entered into with the Heirs, in December of 2014, for representing them in the Will contest. The document was titled "Power of Attorney" and set forth the following agreed upon fee proposal:

1. A contingent fee of 33 1/3% of any settlement in the case.

2. A contingent fee of 40% of any judgment or settlement of the case after the discovery has been completed and all the pre-trial motions have been heard and ruled upon by the court and [have] not been dispositive of the case. At which time[,] serious preparations for trial must be made, so at this time the 40% contingen[t] fee will become operative.

3. All costs and expenses to be borne in advance by clients. The clients are to create an escrow in the amount [of] $15,000.00[,] by depositing it in Mr. Joseph's escrow account by wire service. Attorney Joseph will periodically send financial statements to the client's representative, Dave and/or Alex

---

[3] Mr. Ungarean appealed the orphans' court's decision, which was affirmed by this Court on March 6, 2020. *See In re Estate of Thomas*, 2020 WL 1079252 at *8.

[4] The record reflects that, in August of 2019, David George, Anna Marie Rheingrover, Alex George, Charles George, and James George (collectively "the George Heirs") terminated the services of Attorney Joseph and retained new counsel; however, Attorney Joseph continued to represent Carol Thomas, Theresa Thomas, and Norman Thomas (collectively "the Thomas Heirs") in this matter. Separate counsel was appointed by the court to represent the co-administrators of the intestate Estate going forward. *See* Order, 6/29/20 (single page) (appointing Gary J. Gushard, Esquire, as counsel for the co-administrators of the Estate).

George, signifying how much of the escrow has been spent and/or the need to replenish the funds.

4. If, for some reason[,] the prosecution of a trial is unsuccessful and the clients desire to take an appeal, the costs of the appeal would be an advanced payment of $35,000.00[,] which would include the cost of duplicating all of the records necessary for the appeal, the preparation of the brief, and the subsequent argument by [Attorney] Joseph in the appellant [*sic*] court.

Power of Attorney ("POA" or "Fee Agreement"), 12/9/14, at 1-2 (unnecessary capitalization omitted). Attorney Joseph essentially argued that, pursuant to the Fee Agreement, he is entitled to 40% of the entire Estate, including any future assets acquired by the Estate.

The George Heirs and the Estate filed responses in opposition to Attorney Joseph's fee petition,[5] and a hearing was held on November 10, 2021, at which only Attorney Joseph appeared. **See** N.T., 11/10/21, at 1. The orphans' court issued two orders dated November 10, 2021, which were both filed on November 24, 2021. The first order awarded attorneys' fees in the amount of $1,014,156.00, "to be paid immediately to Richard P. Joseph by the Escrow Agent, Aligned Partners Trust Company[,]" and declared that, under his POA, Attorney Joseph is entitled to 40% of any Estate assets. Order,

_____

[5] The record reflects that, on October 20, 2020, Charles George, Alex George, Norman Thomas, and Theresa Thomas renounced their right to administer the Estate, resulting in the Estate being co-administered by David George, Anna Marie Rheingrover, James George, and Carol Thomas. On January 28, 2021, the Estate's response in opposition to the fee petition was filed — purportedly by its four co-administrators, including Carol Thomas; however, the orphans' court noted that Carol Thomas did not verify the answer and she advised the court that she did not oppose the petition for attorneys' fees. **See** Orphans' Court Opinion, 2/22/22, at 2.

11/24/21 (single page). Being that he is entitled to 40% of the Estate's assets, the second order declared that Attorney Joseph is also entitled to the filing of an attorney's charging lien against the George Heirs and the Estate.

On December 10, 2021, the Estate, by the majority of its co-administrators, David George, James George, and Anna Marie Rheingrover, filed a timely notice of appeal at docket No. 1486 WDA 2021, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[6] This Court quashed the appeal at No. 1486 WDA 2021 *sua sponte* and without prejudice, after determining that the orders dated November 10, 2021, from which the Estate purported to appeal, were not docketed. **See** *Per Curiam* Order, 4/13/22 (single page) (quashing the appeal); *Per Curiam* Order, 3/30/22 (single page) ("No order of court shall be appealable until it has been entered upon the appropriate docket in the trial court. Pa.R.A.P. 301(a)."). The orphans' court subsequently directed the Register of Wills to file the orders dated November 10, 2021. The Register of Wills complied, and the orders were docketed on August 5, 2022.

Appellants filed a timely notice of appeal at docket No. 981 WDA 2022, appealing from the two orders dated November 10, 2021, and entered on August 5, 2022. This Court determined, however, that "no Orphans' Court

---

[6] In its Rule 1925(b) concise statement, the Estate averred that it was not given notice of the November 10, 2021 hearing, nor did it have knowledge of whether any of the Heirs received notice. Pa.R.A.P. 1925(b) Concise Statement, 1/28/22, at 1-2. Moreover, it indicated that neither the Estate nor the Heirs were represented at the hearing. **Id.** at 2.

Rule 4.6 notice was provided for the October 27, 2021 order that scheduled the November 10, 2021 hearing on Attorney Joseph's fee petition that resulted in the two orders on appeal, constituting a breakdown in court operations." **See** **Per Curiam** Order, 12/13/22, at 1.[7]  Concluding that this failure violated Appellants' due process rights, we vacated the two orders and remanded "for a new hearing on Attorney Joseph's fee petition with proper notice of the hearing." **Id.**

Accordingly, Judge Lutty issued an order scheduling a hearing on the fee petition for July 19, 2023.  **See** Order, 6/12/23 (single page).  Attorney Joseph appeared at the hearing, on behalf of himself and as counsel for the Thomas Heirs.  The Estate was represented by Attorney Gushard and Mark C. Hamilton, Esquire.  David George, one of the Heirs and co-administrators of the Estate, was also present.  **See** N.T., 7/19/23, at 1-2.  During the hearing, the parties agreed that the balance of the escrow account, as of June 30, 2023, was $1,543,711.67.  **Id.** at 7.  Notwithstanding, Attorney Joseph insisted that the Estate is worth $5.7 million.  **Id.** at 30.[8]  Attorney Joseph

---

[7] Orphans' Court Rule 4.6 requires the clerk to give written notice of the entry of an order to each interested party's counsel of record and to note in the docket the date on which said notice was given.  **See** Pa.O.C.R. 4.6(a), (b).

[8] Attorney Joseph claimed to "have the medical records where [the Decedent] stated that he had an estate worth [$]5.7 million and that he had four million [dollars] in the bank."  N.T., 7/19/23, at 30.  **See also id.** at 31 (Attorney Joseph's claiming to have voluminous bank documents indicating the Decedent's bank account balance, as of an unspecified date, in the amount of $4,587,497.34).  No such documents were produced at the hearing.

argued that he is owed $1,209,755.36 in attorneys' fees for his legal services rendered in connection with the Will contest. The Estate countered that Attorney Joseph is only owed $561,260.80. *Id.* at 17.[9]

Following the July 19, 2023 hearing on Attorney Joseph's fee petition, the orphans' court issued two orders dated August 31, 2023, both of which were docketed on September 5, 2023. The first order declared:

> Attorney Richard Joseph is entitled to $851,505.00,[10] plus 40% of any assets belonging to the Estate of John J. Thomas and being in that position, he is entitled to the filing of this Attorney's Charging Lien against the Respondents, Attorney[,] and Administrators for the Estate of John J. Thomas at the above number and term.

_____

[9] Attorney Hamilton noted that the amount claimed by Attorney Joseph to be due to him — $1,209,755.36 — is equivalent to 78% of the amount that the parties agreed was held in escrow as of June 30, 2023. N.T., 7/19/23, at 20. He further explained that the amount claimed to be owed by the Estate — $561,260.80 — represents 40% of the net amount in escrow after legal fees and costs, minus $31,000.00 for monies that were advanced to Attorney Joseph by the Heirs. *Id.* at 12, 17-18, 27. *See also* Post-Hearing Memorandum, 7/26/23, at 2-3 (indicating that, as of July 17, 2023, counsel for the Estate incurred legal fees in the amount of $60,984.50 and legal costs in the amount of $2,075.16; arguing that said legal fees and costs should be subtracted from the escrow amount before calculating Attorney Joseph's 40% contingent fee, as the POA does not contemplate payment out of the gross pre-tax Estate).

[10] The orphans' court did not explain how it determined that Attorney Joseph was entitled to fees in the amount of $851,505.00; however, the parties surmise that it arrived at this figure by calculating 40% of $1,824,764.82 (the gross amount of the Estate's Inventory dated February 26, 2015), adding $120,000.00 for appellate work (representing 40% of $300,000.00 — the amount Attorney Joseph purports to have saved the Heirs by winning the appeal at No. 522 WDA 2019), and rounding down to the nearest dollar. *See id.*; Appellants' Brief at 24-25; Attorney Joseph's Brief at 7.

Order ("Order I"), 9/5/23 (single page). The second order, filed simultaneously with Order I, decreed:

> [T]he legal fees presently owing to Attorney Richard Joseph are $851,505.00, to be paid immediately to [Attorney] Joseph by the Escrow Agent, Aligned Partners Trust Company. This money shall be paid to Mr. Joseph with up to 10 checks totaling the full amount of the judgment. Further, [Mr.] Joseph, under his POA is entitled to 40% of any assets belonging to the Estate of John J. Thomas.

Order ("Order II"), 9/5/23 (single page).[11]

On September 19, 2023, the Estate, by the majority of its co-administrators, David George, James George, Jr., and Anna Marie Rheingrover, filed a motion to clarify the September 5, 2023 orders. In support of its motion, the Estate reported that, as of June 30, 2023, there was $1,543,711.67 in escrow, which represented the entirety of the Estate's assets at the time. Motion to Clarify, 9/19/23, at ¶ 13. It explained that the $851,505.00 in fees awarded to Attorney Joseph represented 55% of this amount, which is more than the Estate believed he was entitled to under the terms of the Fee Agreement. *Id.* at ¶¶ 15, 17. Notwithstanding, the Estate expressed a concern over the alleged ambiguity created by the language of the orders. It inquired whether the court had intended to grant Attorney Joseph an **additional** 40% of the **remaining** escrow funds after the payment of Attorney Joseph's fee (which would result in him receiving 73% of the current Estate assets), or if it had only intended to award him a 40% lien on

---

[11] We refer to Order I and Order II collectively herein as "the September 5, 2023 orders."

any **future** assets that may be recovered by the Estate, in addition to his fee. *Id.* at ¶¶ 5, 11, 17.

On September 29, 2023, while the motion to clarify remained pending, Appellants filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellants present the following issues for our review:

1. [Whether] the [orphans'] court erred in issuing orders that awarded [Attorney Joseph] more legal fees than he is entitled to under the clear terms of his written fee agreement[?]

2. [Whether] the [orphans'] court erred in granting [Attorney Joseph] an attorney's charging lien against the Estate when all factors required for imposition of an attorney's charge [*sic*] lien have not been met[?]

3. [Whether] the [orphans'] court erred in issuing these orders without an opportunity for discovery, cross-examination and a proper adjudication on the merits[?]

Appellants' Brief at 8 (unnecessary capitalization omitted).

## II.  Discussion

As a prefatory matter, we must determine whether Appellants possess standing to appeal from the September 5, 2023 orders.  Both Attorney Joseph and the orphans' court have raised this question.  **See** Orphans' Court Memorandum, 11/21/23, at 4 ("Because none of the Appellants have standing to appeal this court's award of attorney[s'] fees, [the appeal] should be quashed.") (cleaned up); Attorney Joseph's Brief at 4-6 (arguing that the Estate does not have standing to appeal the orphans' court's decision and requesting that this appeal be quashed).

Pennsylvania Rule of Appellate Procedure 501 provides, in relevant part, that "any party who is aggrieved by an appealable order, or a fiduciary[12] whose estate or trust is so aggrieved, may appeal therefrom." Pa.R.A.P. 501; *see also id.* at *Note* ("Whether or not a party is aggrieved by the action below is a substantive question determined by the effect of the action on the party, *etc*."). We have consistently held:

> A party is aggrieved for purposes of establishing standing when the party has a substantial, direct and immediate interest in the outcome of the litigation. A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; … direct when the asserted violation shares a causal connection with the alleged harm; [and] … immediate when the causal connection with the alleged harm is neither remote nor speculative.

*Rellick-Smith v. Rellick*, 147 A.3d 897, 901 (Pa. Super. 2016) (citation omitted). *See also In re J.G.*, 984 A.2d 541, 546 (Pa. Super. 2009) (stating, "a party is 'aggrieved' when the party has been adversely affected by the decision from which the appeal is taken").

Moreover, it has long been established that an appeal may not be taken in the name of a decedent's estate. *In re: Harrisburg Trust Company*,

_____

[12] For purposes of Rule 501, "[t]he fiduciary may be a trustee, a receiver, an executor or administrator of an estate." 20 West's Pa. Prac., Appellate Practice § 501:12. *See also* 20 Pa.C.S. § 102 (defining "fiduciary" as including "personal representatives … subject to the jurisdiction of the orphans' court division"); *id.* (defining "personal representative" as either "an executor or administrator"). "An executor is designated by the testator, and derives the authority to act from the testator's will. An administrator, by contrast, is the personal representative when the decedent dies intestate … [and] is appointed from a class of eligible persons designated by statute…." PAJUR PROBATE § 8:1 (footnotes omitted).

- 11 -

1923 WL 6286, at *1 (Pa. Super. Mar. 19, 1923) ("There is no such legal entity as an 'estate[.]'"). However, if an estate is aggrieved by a decision of the orphans' court, an administrator or executor may appeal on the estate's behalf. **Id. See also In re Miles' Estate**, 1928 WL 4630, at *1 (Pa. Super. Nov. 22, 1928) ("No one but an executor or administrator can appeal on behalf of the estate of a deceased person."). Nevertheless, an executor cannot appeal, "merely by virtue of his or her official capacity, … from a decree of distribution … to which he or she must account so long as that decree does not surcharge the executor or make distribution of an amount larger than the total of the estate's assets." **Appeal of Gannon**, 631 A.2d 176, 181 (Pa. Super. 1993) (citations omitted).

> As explained by our Supreme Court:
>
> Unless an executor has been surcharged or has been ordered to distribute more than the admitted balance in the estate, the executor is not a 'party aggrieved' by the final order or decree of the orphans' court. The executor is merely a holder of the estate's assets for the purpose of administration and distribution and is not adversely affected by a decision of the orphans' court directing the distribution of those assets. **Musser's Estate**, … 17 A.2d 411 ([Pa.] 1041); **Kennedy's Estate**, … 194 A. 901 ([Pa.] 1937); **Reese's Estate**, … 177 A. 792 ([Pa.] 1935); **Hand's Estate**, … 136 A. 864 ([Pa.] 1927).

**In re Estate of Hain**, 346 A.2d 774, 776 (Pa. 1975).[13] On the other hand, "[a]n heir … has standing to appeal from a decree distributing assets of the

---

[13] An administrator has also been determined to have a right to appeal on behalf of an estate where the question involved related to the recovery of an asset of the estate, rather than distribution. **See In re Krick's Estate**, 20
*(Footnote Continued Next Page)*

estate where the heir's … interests are affected such that the heir … is an aggrieved party." 16 Standard Pennsylvania Practice 2d § 85:88 (footnotes omitted).

In the case *sub judice*, the appeal was filed on behalf of: "The Estate of John J. Thomas, deceased, by the majority of its co-administrators, David J. George, James H. George, Jr., and Anna Marie Rheingrover[;] and David J. George, James H. George, Jr., and Anna Marie Rheingrover[,] as beneficiaries and heirs of John J. Thomas[.]" Notice of Appeal, 12/29/23, at 1 (unnumbered; cleaned up). Thus, Appellants brought this appeal in both their capacity as **co-administrators** of the Estate **and** individually, as **heirs** of the Decedent. Moreover, we observe that the orders from which they appeal concern only the distribution of Estate assets and the priority of said distributions. **See** Order I (stating the amount awarded to Attorney Joseph regarding his fee petition and declaring that he is entitled to an attorney's charging lien in that same amount);[14] Order II (ordering partial distribution of

_____

A.2d 195, 198 (Pa. 1941) (concluding that the administrator "had the right to take the present appeal, since there is not involved a dispute as to distribution, but the recovery by the estate of which it is administrator of an asset belonging to it").

[14] Pennsylvania courts recognize the right of a lawyer to an attorney's charging lien, "or the right to be paid out of a fund or judgment which he has been instrumental in recovering for his client." **Smyth v. Fidelity & Deposit Co. of Maryland**, 192 A. 640, 643 (Pa. 1937). **See also Appeal of Harris**, 186 A.92, 95 (Pa. 1936) (explaining in the context of a charging lien that "the fund is not actually charged with a lien; indeed, it is rather in the nature of an equitable allowance, but it has the effect of a lien"); **Smith v. Hemphill**, 180
*(Footnote Continued Next Page)*

the Estate's assets to Attorney Joseph). No recovery of assets by the Estate is involved. *See In re Krick's Estate*, *supra*.

Since the record indicates that the amount awarded to Attorney Joseph is less than the Estate's available escrow balance and there is no evidence of a surcharge being issued, we conclude that Appellants — in their capacity as co-administrators — were not adversely affected by the entry of the September 5, 2023 orders. *See In re Estate of Hain*, *supra*; *Appeal of Gannon*, *supra*. However, we consider Appellants — in their individual capacity as heirs — "aggrieved parties," as these orders have a substantial, direct, and immediate adverse effect on the amount of the Estate assets available for distribution to all the Heirs, including Appellants. *See Rellick-Smith*, *supra*; *In re J.G.*, *supra*. Hence, Appellants properly brought this appeal in their capacity as heirs. *See* 16 Standard Pennsylvania Practice 2d § 85:88 (explaining that an heir has standing to appeal from a decree which adversely affects his or her interest in assets of the estate).

Nevertheless, even if this appeal was only brought by Appellants as co-administrators of the Estate, we would still address the merits of the issues on appeal. *See In re Estate of Hain*, 346 A.2d at 776 ("When a party has

---

A.3d 773, 777-78 (Pa. Super. 2018) (determining that a valid attorney's charging lien existed regarding the attorney's successful representation of the plaintiff in the underlying action and, accordingly, directing the distribution of funds to the attorney in the amount of his charging lien prior to disbursing the remaining balance to the plaintiff); *Turtle Creek Bank & Trust Co. v. Murdock*, 28 A.2d 320, 323 (Pa. Super. 1942) (stating that the attorneys' right to a charging lien is based on equitable principles).

- 14 -

erroneously challenged an order or decree of the orphans' court as executor but properly could have proceeded in some other capacity, the party is entitled to retain the benefit of the appeal in the proper capacity.") (citations omitted); *In re Bokey's Estate*, 194 A.2d 194, 195 n.5 (Pa. 1963) ("As administrator, [the appellant] has no standing to take this appeal from a decree which involves a question of distribution. However, we shall treat this appeal as though taken by [the appellant] in his individual capacity and consider that [the appellant's] counsel represents him as an individual.") (emphasis omitted); *In re Estate of Blumenthal*, 812 A.2d 1279, 1285 n.1 (Pa. Super. 2002) (concluding that while co-executors did not have standing to file exceptions in that capacity, the error was not fatal as they had standing to take such action in their individual capacities as beneficiaries).

## A. Award of Attorneys' Fees

We review Appellants' first issue regarding the orphans' court's award of attorneys' fees, mindful of the following:

> Our standard of review of the findings of an orphans' court is deferential.
>
> When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions.

- 15 -

> *In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016)[ (citation omitted)]. The decision of the orphans' court will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law. *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa. Super. 2003). This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination. *Kripp v. Kripp*, … 849 A.2d 1159, 1164 n.5 ([Pa.] 2004).

*In re Estate of Tscherneff*, 203 A.3d 1020, 1024 (Pa. Super. 2019) (cleaned up).

Instantly, Appellants claim that the orphans' court awarded Attorney Joseph 55% of the available funds in escrow, which is more than they believe he is entitled to under the terms of the Fee Agreement. Appellants' Brief at 19-20. In support of their argument, they point to the language of the POA, which states that Attorney Joseph is entitled to a "contingent fee of 40% of any judgment…." Appellants' Reply Brief at 7 (quoting POA at 1 ¶ 2). They note that "[t]here was never any judgment in the underlying trial upon which to base the fee award." *Id.* at 8. Nonetheless, Appellants explain that "[t]he trial resulted in the Will being set aside[,] after which the funds recovered from the prior executor were deposited into the Aligned Partners escrow account[,] where those funds remain today." *Id.*[15] As such, they advance that the contingent fee should be calculated on "the amount placed into

---

[15] At the July 19, 2023 fee petition hearing, Appellants' counsel explained that "[t]he original executor, [Mr.] Ungarean, … paid the inheritance tax on the [$]1.8 million that was in the inventory. So, the remainder that's left is in the escrow account awaiting distribution[,] once the court figures out what [Attorney] Joseph is owed." N.T., 7/19/23, at 16.

escrow, which is the amount actually recovered by [Attorney Joseph] for the [H]eirs." *Id.* Appellants argue:

> To permit Attorney Joseph's legal fee to be calculated against the gross[,] pre-tax Estate as he contends would be to his benefit and [to] the detriment of the eight Heirs. Such a calculation is also contrary to the well-established legal principle that contracts are construed against the drafter and so any issue of interpretation is to be decided against Attorney Joseph and in favor of the intestate Heirs. *See*[*, e.g.*], *Dieter v. Fidelcor, Inc.*, 657 A.2d 27 (Pa. Super. 1995).

Post-Hearing Memorandum at 3 (cleaned up).

Appellants further contend that the Heirs advanced $31,000.00 to Attorney Joseph over the course of the underlying litigation, for which Attorney Joseph has never accounted. Hence, they argue that the contingent fee should be subject to a set-off in the amount of $31,000.00. *See id.*; Appellants' Reply Brief at 9; N.T., 7/19/23, at 34-35 (Appellants' counsel's offering Exhibit 5 into evidence, which "is the account of how much was advanced to Attorney Joseph by the [H]eirs"). *See also* Appellants' Reply Brief at 9 (claiming that Attorney Joseph never sent financial statements to the Heirs "signifying how much of the escrow has been spent and/or the need to replenish the funds[,]" as required by paragraph 3 of the POA) (quoting POA at 1 ¶ 3).

Additionally, Appellants aver that "[t]here is nothing due to [Attorney Joseph] for appellate work because the POA only provides for such compensation **if** the 'trial is **unsuccessful** and **the clients** desire to take an appeal….'" *Id.* (emphasis added; citation omitted). They explain that "[s]ince

[Attorney Joseph] prevailed during the will contest and the resulting appeal was filed by the former executor, [Mr.] Ungarean, there is no further compensation owed to [Attorney Joseph] under the terms of the POA." ***Id.*** Alternatively, they contend that if the Court were to determine that Attorney Joseph was entitled to additional compensation for appellate work, such an award would be limited to $35,000.00, as "the only compensation for appellate work contemplated by the POA is a flat fee of $35,000[.00]." ***Id.*** at 21-22. ***See also id.*** at 24 (speculating that the amount awarded to Attorney Joseph by the orphans' court includes $120,000.00 for appellate work).

By contrast, Attorney Joseph insists that the orphans' court's award is consistent with the terms of the POA. ***See*** Attorney Joseph's Brief at 7. He reasons that the orphans' court's computation — which is seemingly based on the gross value of Estate assets — was appropriate because the POA "says nothing about any reduction to account for inheritance tax obligations." ***Id.*** at 7-8. Nor does he believe there is any basis for offsetting his fee award with the fees and costs incurred by Appellants' counsel. ***See id.*** at 8; N.T., 7/19/23, at 34 (Appellants' counsel arguing that Attorney Joseph's contingent fee should be calculated after taking into account the Estate's costs, including the attorneys' fees and costs incurred by Appellants' counsel during the underlying litigation). Finally, he contends that there was no abuse of discretion on the part of the orphans' court for failing to account for monies purportedly advanced by the Heirs to Attorney Joseph. ***See id.*** at 9 (asserting that no testimony was offered to authenticate Appellants' Exhibit 5).

- 18 -

It is uncontested that the Fee Agreement entered by the parties is controlling in determining the amount of fees owed to Attorney Joseph for his representation of the Heirs in the Will contest matter; thus, we turn to the terms of the POA, which provides in relevant part:

> This document sets forth the legal relationship by and between the undersigned parties[,] consisting of [the eight Heirs] … and [Attorney] Joseph…, who is being retained to handle [the Heirs'] appeal concerning the Granting of Letters to a Will which was filed in the Beaver County Orphans' Court[,] purporting to be the Will of the late John J. Thomas, filed at Case No. 04-14-1068…. [T]he following fee agreement has been agreed upon by the parties…:
>
> …
>
> 2.  A contingent fee of 40% of any judgment….
>
> 3.  All costs and expenses to be borne in advance by clients. The clients are to create an escrow in the amount [of] $15,000.00[,] by depositing it in [Attorney] Joseph's escrow account by wire service. Attorney Joseph will periodically send financial statements to the clients' representative, David and/or Alex George, signifying how much of the escrow has been spent and/or the need to replenish the funds.
>
> 4.  If, for some reason[,] the prosecution of a trial is unsuccessful and the clients desire to take an appeal, the costs of the appeal would be an advanced payment of $35,000.00[,] which would include the cost of duplicating all of the records necessary for the appeal, the preparation of the brief, and the subsequent argument by [Attorney] Joseph in the Appellant [*sic*] Court.

POA at 1-2.

When interpreting a written agreement, we must ascertain the intent of the parties. ***See Kripp***, 849 A.2d at 1163 (citation omitted).

> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be

given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible [to] different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

*Id.* (internal citations omitted).

Moreover, "court[s] must construe a contract as written and may not modify the plain meaning of the contract under the guise of interpretation." *In re Estate of Blumenthal*, 812 A.2d at 1286 (citation omitted). "However, where an ambiguity exists, the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing." *Id.* (internal quotation marks and citations omitted). *See also Windows v. Erie Insurance Exchange*, 161 A.3d 953, 957 (Pa. Super. 2017) ("Under general contract rules, a promise … if ambiguous, will be construed *contra proferentum*, against the party having drafted it.") (internal brackets omitted; italics in original); 11 Williston on Contracts § 32:12 (4th ed.) ("Indeed, any contract of adhesion, which is a contract entered without any meaningful negotiation by a party with inferior bargaining power, is particularly susceptible to the rule that ambiguities will be construed against the drafter.") (footnote omitted).

Of course,

> this general rule of construction does not absolve the court of its obligation to consider the circumstances from which the written instrument sprang. If extrinsic evidence will aid in the resolution of ambiguities, the court must look to it. If, moreover, the extrinsic evidence raises disputed issues of material fact, the court must refer those issues to the fact finder. *See Hutchison v. Sunbeam Coal Corp.*, [519 A.2d 385 (Pa. 1986)]; *Gonzalez v. United States Steel Corp.*, [398 A.2d 1378 (Pa. 1979)]. Only in the absence of useful extrinsic evidence will the court construe ambiguous contract language against the drafter as a matter of law. *See Hutchison*…, … 519 A.2d at 391-92 n.5; Restatement (Second) Contracts § 206 comment a (1981).

*DiFabio v. Centaur Ins. Co.*, 531 A.2d 1141, 1142-43 (Pa. Super. 1987).

We are also mindful that "[c]ontingency fee agreements are subject to careful scrutiny by the courts in order to [e]nsure that they are reasonable and that no unfair advantage has been taken of the client." *Miernicki v. Seltzer*, 458 A.2d 566, 569 (Pa. Super. 1983) (citations omitted). This Court has determined that, "[t]o be held reasonable, the fee must be computed upon the amount of the **actual recovery** and not on the amount of the verdict rendered." *Id.* (citations omitted; emphasis added). In fact, "in exercising control over legal fees, courts normally compute the amount of contingent fees with reference to **the amount the client has received** and not by reference to the total award." *Id.* (citations omitted; emphasis added). *See also National Bank of Topton v. Holland*, 154 A.2d 252, 253 (Pa. 1959) (calculating the contingent attorney fee on the balance of the recovery after the deduction of expenses); *In re Gleckel's Estate*, 38 A.2d 374, 376 (Pa. Super. 1944) (sustaining the lower court's award of a contingent fee based on the amount actually recovered rather than the amount awarded to the

decedent, reasoning that the "[attorney's contingent fee] claim of 25% upon the award instead of upon the actual recovery shows its unreasonableness when we consider that on this basis [the] appellant would actually receive more than 45% of the monies recovered").

Based on our review of the Fee Agreement in this matter, we believe that the parties clearly intended for Attorney Joseph to receive a 40% contingent fee for the successful outcome at trial regarding the Heirs' contest of the Will. *See* POA at 1 ¶ 2. In fact, Appellants have conceded as much on appeal. *See* Appellants' Brief at 21 ("Since [Attorney Joseph] was successful in the will contest trial, he is entitled to a … 40%[] recovery under the terms of the POA that he drafted."). The dispute arises, however, over how the contingent fee should be calculated. Essentially, Attorney Joseph argues that the orphans' court properly computed his fee award based on the gross value of the Estate Inventory, whereas Appellants contend the fee should have been determined based on the net amount available for distribution, after taxes and expenses have been paid.

While we agree that the POA unambiguously provides for a 40% contingent fee, we deem the agreement to be ambiguous to the extent that it fails to explain how the contingent fee should be calculated. Attorney Joseph, as the drafter, had the opportunity to include language in the document to clarify whether his fee was to be calculated before or after taxes and expenses

are paid by the Estate;[16] however, he failed to do so. Instead, the POA is silent on the method of computation regarding his fee, and neither party has offered any extrinsic evidence to aid in resolving this ambiguity. Thus, to ensure its reasonableness, we construe the Fee Agreement against Attorney Joseph and determine that the 40% contingent fee must be calculated on the net escrow balance available for distribution to the Heirs. *See Hutchison*, *supra*; *Miernicki*, *supra*; *Gleckel's Estate*, *supra*.

As for appellate fees, we agree with Appellants that Attorney Joseph is not entitled to any fees for appellate work. The POA plainly states:

> **If**, for some reason[,] the prosecution of a trial is **unsuccessful** and **the clients** desire to take an appeal, the costs of the appeal would be an advanced payment of $35,000.00[,] which would include the cost of duplicating all of the records necessary for the appeal, the preparation of the brief, and the subsequent argument by [Attorney] Joseph in the Appellant [*sic*] Court.

POA at 1-2 ¶ 4 (emphasis added).

---

[16] In fact, the Pennsylvania Rule of Professional Conduct 1.5(c), which addresses contingent fee agreements, provides:

> A contingent fee agreement shall be in writing and **shall state the method by which the fee is to be determined**, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

Pa.R.P.C. 1.5(c) (emphasis added). Nonetheless, we recognize that the Rules of Professional Conduct do not have the force of substantive law and simply provide a framework for the ethical practice of law. *See In re Estate of Pedrick*, 482 A.2d 215, 217 (Pa. 1984); Pa.R.P.C. Preamble and Scope at ¶ 15.

The Heirs were successful in voiding the Will and, thus, did not pursue an appeal. Attorney Joseph is seeking $120,000.00 in appellate fees for his representation of the Heirs in **Mr. Ungarean's appeal** at No. 522 WDA 2019. **See** Attorney Joseph's Brief at 7 n.2 ("Timothy Ungarean's appeal … did not challenge the finding of forgery, but sought to enforce a claimed oral settlement agreement that would have given him $300,000[.00]. This was his second, last-ditch attempt to acquire what [the Decedent] left behind. Forty percent of $300,000[.00] is $120,000[.00]."). The POA does not provide for any fees for appellate work in connection with an appeal brought by a party other than the Heirs.

Finally, with respect to Appellants' claim that Attorney Joseph's fee award fails to account for monies that they had advanced to him in accordance with the Fee Agreement, we observe that the POA provides, in relevant part:

> All costs and expenses to be borne in advance by clients. The clients are to create an escrow in the amount [of] $15,000.00[,] by depositing it in [Attorney] Joseph's escrow account by wire service. Attorney Joseph will periodically send financial statements to the client's representative, David and/or Alex George, signifying how much of the escrow has been spent and/or the need to replenish the funds.

POA at 1 ¶ 3. To the extent that Appellants are able to produce evidence of monies advanced to Attorney Joseph in accordance with the POA, such funds must be credited in the calculation of Attorney Joseph's contingent fee.

Instantly, the orphans' court awarded Attorney Joseph "$851,505.00, plus 40% of any assets belonging to the Estate…." Order I (single page). **See also** Order II (single page) (declaring that Attorney Joseph is owed legal fees

in the amount of $851,505.00, and is further "entitled to 40% of any assets belonging to the Estate"). We emphasize that the orphans' court has failed to explain on the record how it arrived at the award amount of $851,505.00. However, the parties both claim — and the record appears to support — that the orphans' court calculated this figure using the gross, pre-tax value of the Estate's Inventory as of February 26, 2015; that it included $120,000.00 in appellate fees; and that it did not account for the $31,000.00 purportedly advanced by the Heirs. **See** footnotes 9 and 10, **supra**. Regardless, we discern that the orphans' court erred to the extent that its award is based on the gross value of the Estate's assets rather than on the net amount available for distribution; that it includes any appellate fees; and that it fails to provide a set-off for any fees previously advanced to Attorney Joseph by the Heirs.

Additionally, the orphans' court's declaration that Attorney Joseph is further entitled to "40% of any assets belonging to the Estate" is unclear. Order I (single page); Order II (single page). We agree with Appellants that this language creates confusion over the court's intention, *i.e.*, whether the court intended to grant Attorney Joseph an additional 40% of the remaining escrow funds after the payment of Attorney Joseph's fee, or if it had only intended to award him a 40% lien on any future assets that may be recovered by the Estate, in addition to his fee. **See generally** Motion to Clarify. To the extent the court intended to award Attorney Joseph an additional 40% of the remaining escrow funds after the payment of his fee, we deem that improper for the reasons discussed above.

- 25 -

Based on the foregoing, we vacate the portions of the September 5, 2023 orders awarding Attorney Joseph $851,505.00 in fees and 40% of the Estate assets. We remand for an evidentiary hearing, at which the orphans' court shall determine — consistent with the determinations made herein — the total amount of fees currently owed to Attorney Joseph under the POA.[17]

### B. Attorney's Charging Lien

Appellants further contest the orphans' court's granting Attorney Joseph an attorney's charging lien. **See** Appellants' Brief at 26-30. "The right of an attorney to secure an equitable charging lien upon a fund has been frequently recognized by the appellate courts of the Commonwealth." **Recht v. Urban Redevelopment Authority of City of Clairton**, 168 A.2d 134, 136 (Pa. 1961). As this Court has explained:

> The imposition of a charging lien is based upon the interest of the courts "in protecting attorneys, as its own officers," and in assuring that a party "not run away with the fruits of a lawsuit without satisfying the legal demands of the attorney by whose industry those fruits were obtained."

**Austin v. Thyssenkrupp Elevator Corporation**, 254 A.3d 760, 768 (Pa. Super. 2021) (citation and internal brackets omitted).

"Equitable principles govern whether a charging lien is enforceable." **Id.** at 764 (citation omitted). In its seminal case on the issue, our Supreme Court

---

[17] Such decision shall be made without prejudice to Attorney Joseph's right to seek 40% of any additional assets acquired by the Estate in the future. Any such future award of attorneys' fees shall be calculated on the net amount available for distribution.

set forth the following five conditions which must be met before a charging lien will be recognized and applied:

> [I]t must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised[,] and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

*Recht*, 168 A.2d at 138-39.

"We review decisions relating to charging liens for an abuse of discretion." *Austin*, 254 A.3d at 765. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Id.* (internal quotation marks and citation omitted). Moreover, if a decision is based on findings which are without factual support in the record, we will not hesitate to reverse. *Lilly v. Markvan*, 763 A.2d 370, 372 (Pa. 2000) (citation omitted).

Instantly, Appellants contend that several of the five prerequisites outlined in *Recht* have not been satisfied and, thus, the orphan's court's decision granting the attorney's charging lien was unfounded and must be reversed. Appellants' Brief at 26, 30. Essentially, they argue that

> the fund at issue has not yet been finalized and so it is not available for distribution[;] … there is no agreement that [Attorney

Joseph] would look to the Estate's assets for his compensation rather than to the individuals listed in the POA[;] … a valid attorney's charging lien should be limited to costs, fees and other disbursements incurred in the litigation through which the fund was raised[;] … and perhaps most important[ly], … imposition of a charging lien is an equitable remedy which is completely inappropriate on the facts of this case … [because Attorney Joseph] comes before this Court with unclean hands[.]

*Id.* at 27-29.

Contrarily, Attorney Joseph insists that the criteria for a charging lien have been met. Attorney Joseph's Brief at 10 (citing ***Recht***, 168 A.2d at 138-39). He asserts that, in accordance with ***Recht***, "[t]here is a fund under the control of the court, held by an escrow agent[,]" and notes that the Estate appears to concede that his services operated substantially to secure that fund. ***Id.*** ***See also id.*** at 11 ("The fund here consisted of the decedent's assets. The intestate heirs would have received none of those assets but for Attorney Joseph's work."). Attorney Joseph further states that a contingent fee agreement, "by its very nature, contemplates that the fee will come out of what is recovered for the client or clients." ***Id.*** at 10-11 (citing ***Shenango Systems Solutions, Inc. v. Micros-Systems, Inc.***, 887 A.2d 772 (Pa. Super. 2005)). Moreover, he claims that the amount of the attorney's charging lien awarded to him consisted of fees "incurred entirely in the litigation concerning the proper distribution of the assets of the decedent[,]"

and suggests that any disagreement over the amount can be remedied by an adjustment of the amount. *Id.* at 11-12 (citations omitted).[18]

Our review of this issue is impeded, as the orphans' court has not placed an explanation of its decision to grant Attorney Joseph an attorney's charging lien on the record. Hence, we are constrained to vacate the portions of the September 5, 2023 orders which grant Attorney Joseph an attorney's charging lien, and remand for the orphans' court to consider whether the five requirements set forth in *Recht* have been met, including whether there are equitable considerations which necessitate the application of the charging lien.[19, 20]

Accordingly, we vacate the orphans' court's September 5, 2023 orders and remand for proceedings consistent with this memorandum.

Orders vacated. Case remanded. Jurisdiction relinquished.

---

[18] We note that Attorney Joseph fails to address in his brief whether there are any equitable considerations which necessitate the imposition of an attorney's charging lien. *See Recht*, 168 A.2d at 139.

[19] We emphasize that recognition of an attorney's charging lien is based in part upon equitable considerations. *See Recht*, *supra*. "[H]e who comes into a court of equity must come with clean hands." *In re Estate of Pedrick*, 482 A.2d at 222 (declaring that this familiar equity maxim applies to matters within the orphans' court's jurisdiction); *In re Hays' Estate*, 28 A. 158 (Pa. 1893).

[20] Due to our disposition on Appellants' first two issues, we need not address their third issue regarding whether the orphans' court entered its September 5, 2023 orders without first conducting a proper evidentiary hearing on the merits. *See* Appellants' Brief at 30-34.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>10/24/2024</u>